Vincent Edward COOKS, Appellant,

v.

STATE of Texas, Appellee.

No. 70,772.

Court of Criminal Appeals of Texas, En Banc.

Sept. 16, 1992.

Rehearing Denied Jan. 13, 1993.

E. Brice Cunningham, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., and Jeffrey B. Keck, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MALONEY, Judge.

Appellant was indicted and convicted in Dallas County on a charge of Capital Murder. TEX.PENAL CODE ANN. 19.03(a)(2). The indictment alleged that appellant caused the death of the deceased by shooting him with a firearm in the course of appellant's attempt to commit robbery of Mark DeCardenas. The jury answered the issues submitted to it in the affirmative and the trial court assessed the death penalty. Article 37.071 V.A.C.C.P. Direct appeal was had to this Court. Article 37.071 § 2(h) V.A.C.C.P. Appellant has raised fifty-four points of error in this appeal. A discussion of the facts is necessary to fully address appellant's fifty-first point of error, alleging insufficiency of the evidence. The week of the robbery, appellant and two longtime friends, Tony Ray Harvey and Tracy Stallworth met in Dallas. Appellant and Harvey at that time were residents of Houston and Stallworth resided in Dallas. Harvey testified at trial that he, Stallworth and appellant stole an Oldsmobile Cutless and parked it in a hotel parking lot until the morning of the robbery. On February 26, 1988, the morning of the robbery, appellant, Harvey and Stallworth rented a blue Plymouth, retrieved the stolen Oldsmobile and drove it and the Plymouth to an area near Brancatos Grocery, where they parked the Oldsmobile in the parking lot across from Brancatos Grocery and all three then drove the Plymouth to a parking lot down the street. While appellant and his cohorts were parking in this lot, two passing police officers stopped and briefly questioned them as to what they were doing. Stallworth responded that they were waiting for a bus. Having no reason to inquire further, the officers went on their way. Mark DeCardenas, the owner of Brancatos Grocery, testified that he had noticed a blue Plymouth driving or parked near the store several times earlier on the day of the robbery.

About 4:30 p.m., Mark DeCardenas and the deceased, an off-duty police officer who worked part-time as a security guard at the store, drove to the bank to obtain cash in the amount of $30,000.00, necessary for the store's check cashing service. This additional money was needed in order to cash the number of paychecks customary for a Friday afternoon. Harvey testified at trial that when appellant, Harvey and Stallworth saw DeCardenas and the deceased

returning from the bank, appellant and Harvey got out of the Plymouth, into the Oldsmobile and drove to the parking lot across from Brancatos Grocery. Testimony at trial showed that DeCardenas and the deceased were approached by appellant as they walked across the parking lot and that appellant attempted to grab the paper bag containing the money from DeCardenas. The deceased instructed DeCardenas to run into the store and pushed him toward the door. The bag containing the money was dropped in the scuffle. According to testimony at trial, appellant backed away from the scene, shooting at the deceased, got into the Oldsmobile with Harvey and drove away. The deceased shot at the retreating Oldsmobile, shattering the back window. The deceased sustained fatal gunshot wounds in the encounter.

As the Oldsmobile left the scene, two police officers driving in the opposite direction noticed the broken rear window and, suspecting a stolen vehicle, followed it. When they caught up with the Oldsmobile, it was stopped in the middle of the street, the doors were open and the occupants were gone. A revolver, recovered from the floorboard, was established as the murder weapon.

The license plate number of the rented blue Plymouth, obtained by the police officers who observed and questioned the trio before the robbery, was traced to Stallworth's girlfriend and led to Stallworth's arrest. Based upon information from Stall-

worth, the arrests of Harvey and appellant followed. Fingerprints obtained from the Plymouth and witnesses who identified appellant as the gunman corroborated Harvey's testimony that appellant was the gunman.

In his fifty-first point of error, appellant contends that the evidence was insufficient to support the jury's conviction for capital murder. Appellant points out that DeCardenas was unable to identify appellant as the gunman. DeCardenas testified that he momentarily "blacked out" and did not see the perpetrator's face. Appellant also argues that out of ten witnesses who viewed live lineups, only one positively identified appellant as the assailant and a number of witnesses identified persons other than appellant.[1] Appellant further directs us to inconsistent descriptions of the gunman's height, weight and clothing given to the police following the robbery.[2] Appellant also argues that his fingerprints were not found on the gun, the grocery sack or anywhere in the stolen Oldsmobile.

The State points to the testimony of witnesses who identified appellant as the gunman. In addition to Harvey, appellant's longtime friend and accomplice to the offense, two other witnesses testified at trial that appellant was the triggerman. Frank Green, the manager of the grocery, testified that he viewed the attempted robbery from the store window and subsequently made a positive identification during a live lineup.[3] Another witness, Oliver Powell,

---

1. Evidence pertaining to the pre-trial lineups was presented primarily by the testimony of Officer Donald Ortega, the lead investigating officer. Ortega testified that of ten witnesses who viewed a live lineup, only one (Frank Green) identified appellant. Of those ten witnesses, only DeCardenas, Green and Paul Mountique, a customer in the store at the time of the offense, actually testified at trial.

2. Frank Green, one of the witnesses to the robbery, initially described the gunman to the police as being five foot, ten inches tall and weighing approximately 210 to 220 pounds. At trial Green testified that the gunman he had seen and viewed in a live lineup was six foot, two or three inches tall and weighed from 230 to 250 pounds. Oliver Powell, another witness, described the offender to the police on the day of the offense as six feet, two inches tall and weighing 230

pounds. Although Powell selected appellant from a photo lineup the day after the offense, he never viewed a live lineup. The gunman was described by Paul Mountique, another witness, as six feet tall and weighing 250 to 275 pounds. Mountique viewed a live lineup where he selected someone other than appellant.

3. The night of the robbery Green viewed a photo lineup which did not include appellant's photo. Green was unable to identify anyone as the perpetrator in that photo lineup. The next day Green viewed another photo lineup which included appellant's photo. Green testified that he tentatively identified appellant, but stated that he was not positive and did not want to implicate the wrong person. He later attended a live lineup and positively identified appellant as the offender. In appellant's thirty-sixth point of error, addressed later in this opinion, appel-

testified that he was crossing the parking lot when the Oldsmobile cut in front of him and appellant got out and approached De-Cardenas and the deceased. Powell further testified that appellant attempted to grab the paper bag containing the money from DeCardenas, that appellant then backed away from DeCardenas and the deceased, pulled out a gun and fired at the deceased. Powell testified that the day after the robbery, he identified appellant in a photo lineup. The State contends that despite some inconsistencies between descriptions given at the scene of the crime and appellant's actual appearance, Powell's and Green's testimony is sufficient to satisfy the issue of the sufficiency of the evidence. With respect to the lack of fingerprints, the State points out that a glove was recovered from the stolen vehicle and appellant's fingerprints were found in the blue Plymouth.

In reviewing the sufficiency of the evidence, we view the evidence "in the light most favorable to the verdict", *Bowden v. State,* 628 S.W.2d 782, 785 (Tex.Cr.App. 1982), and ask whether "any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Cr.App.1981) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979)). Here, eye witnesses to the crime positively identified appellant as the gunman in photo and live lineups and at trial. Appellant's fingerprints were found in the blue Plymouth which was observed by two police officers and DeCardenas as being near the scene of the crime close to the time of the offense. Appellant's friend and cohort, Tony Ray Harvey, testified that the robbery was planned and committed by appellant, Harvey and Stallworth and that appellant was the gunman. However, the weight to be given to the testimony of Harvey, an accomplice in the subject crime, is governed by article 38.14 of the Code of Criminal Procedure which states that "[a] conviction cannot be had upon the testimo-

ny of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." The evidence at trial, apart from Harvey's testimony, must "tend to connect" appellant with the robbery.

The testimony of the other eye witnesses, the sightings of the blue Plymouth near the scene of the crime and the fingerprints of appellant found in the Plymouth all "tend to connect" appellant with the subject offense. The fact that the record contains some inconsistencies in the descriptions given of appellant does not render the evidence insufficient to support a conviction. *Bowden,* 628 S.W.2d at 784–85. Similarly, the fact that only one out of ten witnesses to the crime who were shown live lineups identified appellant as the gunman does not render the evidence insufficient. These facts and inconsistencies were presented to the jurors for their review and evaluation in light of all the evidence. Reconciliation of conflicts and inconsistent evidence are matters for consideration by the members of the jury. *Id.* We conclude that the evidence is sufficient to support the jury's conviction of appellant. Appellant's fifty-first point of error is overruled.

We now address the remainder of appellant's points of error. In appellant's first, second and third points of error, appellant contends that the trial court erred in overruling his challenges for cause with respect to three venirepersons, Madie Harvey, Samuel Weldon Jackson and Johnny Luttrull, alleging that their testimony reflected that they would each be unable to assess the minimum five year sentence for murder in the event of a guilty verdict. Venireperson Jackson was further challenged for cause because Jackson allegedly would require appellant to present mitigating evidence before he would answer "no" to sub-

---

lant claims that the lineup procedures involving Green were impermissibly suggestive. Specifically, he claims that Green's tentative identifica-

tion of appellant in the photo lineup led him to look for and identify appellant in the subsequent live lineup.

mitted issue number two [4] and also because Jackson allegedly was biased due to his exposure to pretrial publicity.

Quoting from this Court's decision in *Pierce v. State*, 604 S.W.2d 185, 187 (Tex. Cr.App.1980), appellant argues that the subject venirepersons should have been excused for cause because appellant is "entitled to have jurors who believe in the full range of punishment." Appellant claims that because of the trial court's ruling he was forced to use peremptory strikes to exclude these venirepersons and was accordingly deprived of the use of those peremptory challenges to exclude subsequent venirepersons which he found objectionable.

Since a number of appellant's points of error complain that the trial court improperly overruled certain of appellant's challenges for cause, we shall discuss here the proper standard in reviewing such rulings and will not fully repeat this discussion when addressing each such point of error. "[T]he proper standard to be used in disqualifying prospective jurors in death penalty cases is to determine whether their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions given and the oaths taken." *Jacobs v. State*, 787 S.W.2d 397, 402 (Tex.Cr.App. 1990), *cert. denied*, 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990) (citations omitted). In reviewing the decisions of a trial court in this regard, we have repeatedly recognized that considerable deference must be given to the trial judge who is in the best position to observe the prospective jurors and evaluate their responses. *Id.; Fuller v. State*, 827 S.W.2d 919, 924 (Tex. Cr.App.1992). A trial court's ruling on a challenge for cause will be reversed only when the record shows a clear abuse of discretion. *Jacobs*, 787 S.W.2d at 402; *see also Farris v. State*, 819 S.W.2d 490, 501 (Tex.Cr.App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992). In examining the record we review

the testimony of the questioned venireperson "as a whole." *Farris*, 819 S.W.2d at 501.

With respect to appellant's points of error one, two and three, in assessing a potential juror's capacity to consider the full range of punishment available, we examine the juror's testimony as a whole and determine whether the questioned juror's view of the range of punishment amounts to bias or prejudice against the law. *See, e.g., Pyles v. State*, 755 S.W.2d 98, 103 (Tex.Cr. App.1988), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *see also Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Crane v. State*, 786 S.W.2d 338, 343 (Tex. Cr.App.1990). Generally, where it is clear from the responses given by a prospective juror that he is unable to consider the full range of punishment available for the crime committed, he is deemed biased as a matter of law and a challenge for cause should be granted. *Nethery v. State*, 692 S.W.2d 686, 691 (Tex.Cr.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). However, "where the juror states he believes that he can set aside any influences he may have, and the trial court overrules a challenge for cause, its decision will be reviewed in light of all the answers the prospective juror gives." *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Cr.App.1982).

Here, the record reflects that even though the questioned venirepersons initially expressed certain reservations about assessing the minimum sentence of five years in a murder case, each of them nevertheless ultimately testified that they could follow the law and keep an open mind when assessing the range of punishment in light of the evidence presented. Because their testimony reflected that they would follow the law and be willing to assess the minimum sentence under the appropriate facts, the trial court did not abuse its discretion in overruling appellant's challenges for

---

4. Submitted issue number two was included in the court's charge to the jury at punishment as follows:

Is there a probability that the [appellant] would commit criminal acts of violence that would constitute a continuing threat to society?

cause on the issue of whether venirepersons Harvey, Jackson, and Lutrull could consider the full range of punishment and would not be biased in answering the submitted issues. *Faulder v. State*, 745 S.W.2d 327, 339–40 (Tex.Cr.App.1987).

We also find that the trial court did not abuse its discretion in finding no merit in appellant's other allegations with respect to venireman Jackson. Appellant contends that Jackson would place an unacceptable burden on the defense by requiring the defense to present mitigating evidence with respect to submitted issue number two. However, the record on voir dire does not indicate that Jackson would require the defense to present such evidence in order to answer "no" to submitted issue number two. Jackson testified that he would like to be presented with evidence of appellant's character, prior offenses and "anything that would help me make a decision" prior to responding to submitted issue number two. This testimony merely evidences Jackson's desire to review the relevant facts before making a decision. Moreover, Jackson testified that if the only evidence presented were the facts of the subject crime, he would answer "no" to submitted issue number two.

Appellant also claims that Jackson was biased because of his exposure to pretrial publicity. In response to questions concerning pretrial publicity, Jackson informed the court that the deceased's wife had been his daughter's school teacher at the time of the offense and also testified that he had heard radio news reports and had read newspaper articles about the shooting. However, Jackson testified that he had not formed an opinion regarding appellant's guilt or innocence that would influence his decisions in reaching a verdict. Specifically, with respect to the deceased's wife, Jackson stated that he had met her on only one occasion and unequivocally testified that he would be able to keep an open mind with respect to her testimony.

Article 35.16(a)(10) of the Code of Criminal Procedure provides that if, from exposure to pretrial publicity such as newspaper articles or other media, a prospective juror forms a conclusion as to the guilt or innocence of the defendant that would influence his verdict, he must be discharged. Article 35.16(a)(10) V.A.C.C.P.[5]; *see also Faulder*, 745 S.W.2d at 340–41. However, where, a prospective juror testifies that he is able to set aside any outside influences and render a fair and impartial verdict based upon the evidence presented, the denial of a challenge for cause will not be error. *Id; see also Bell v. State*, 724 S.W.2d 780, 797 (Tex.Cr.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Anderson*, 633 S.W.2d at 854 (denial of challenge for cause not error even when juror knew rape victim and witnesses); *Esterline v. State*, 707 S.W.2d 171, 175 (Tex.App.—Corpus Christi 1986, pet. ref'd) (where juror stated that he could be fair and had not formed an opinion about guilt or innocence, the court did not err in overruling challenge for cause even though juror was a police officer and knew police officers who would be testifying at trial). Here, Jackson agreed during voir dire that he had not reached any conclusion

5. Article 35.16(a)(10) V.A.C.C.P. provides that a challenge for cause by either party is allowed for the following reason:

That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. To ascertain whether this cause for challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative, he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed, and the extent to which it will affect his action; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states that he feels able, notwithstanding such opinion, to render an impartial verdict on the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged.

regarding appellant's guilt or innocence. In light of Jackson's testimony that his verdict would not be influenced by any of the pretrial elements to which he had been exposed, we hold that the trial court did not abuse its discretion in refusing appellant's challenge for cause against Jackson. Appellant's points of error one, two and three are overruled.

In his fourth and fifth points of error, appellant alleges that the trial court erred in overruling his challenges for cause with respect to venirepersons Harvey and Luttrull on the ground that they would always answer "yes" to submitted issue number one[6] in the event of a finding of guilt.

■ Although venireperson Harvey testified that she found it "difficult" to make a distinction between the terms intentional and deliberate, she agreed that there is enough difference between the two terms so as to amount to a barrier. Further, Harvey stated unequivocally that she would follow her oath and answer the issues based upon the evidence. In view of Harvey's testimony that she recognized a distinction between the terms "intentional" and "deliberate" and agreed to follow her instructions and consider the evidence presented in answering the submitted issues, we hold the trial court did not abuse its discretion in overruling appellant's challenge for cause against prospective juror Harvey. Appellant's point of error number four is overruled.

■ We also hold that the trial court did not abuse its discretion in overruling appellant's challenge for cause with respect to venireperson Luttrull. Appellant argues that because Luttrull testified that he did not consider a deliberate act to require more than an intentional act, he was essentially applying a legally unacceptable standard. Appellant bases this argument upon Luttrull's voir dire testimony that he believed a person could deliberately, but not necessarily intentionally, shoot and kill another person. However, when subsequent-

ly questioned by defense counsel as to whether one could conclude, then, that "if a person intentionally kills a person that would then always be deliberate", Luttrull disagreed. In response to further questions of defense counsel as to whether he could answer submitted issue one in the negative and find that the accused did not act deliberately, even after a finding that he had acted intentionally, Luttrull responded that he could. Following completion of questioning by the defense, the State further instructed Luttrull on the distinction between intentional and deliberate and Luttrull agreed that "deliberate should mean more than intentional."

An isolated statement will not require that a juror be struck for cause when his testimony taken as a whole indicates that he is not biased. *Fearance v. State,* 771 S.W.2d 486, 500 (Tex.Cr.App.1988), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). Even if Luttrull did have some initial confusion as to the distinction between the terms, his later testimony reflected otherwise. Accordingly, the trial court did not abuse its discretion in determining that Luttrull's initial testimony did not reflect that he maintained a view that would prevent or impair his performance as a juror. *See McCoy v. State,* 713 S.W.2d 940, 951 (Tex.Cr.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant claims the trial court erred in overruling his challenge for cause with respect to veniremember Russell Cowan on the ground that Cowan would automatically answer all three submitted issues in the affirmative upon a finding of guilt. Appellant further alleges that venireperson Cowan's views on sentencing issues are such that they would substantially impair the performance of his duties as a juror and that he would impose the death penalty "in an arbitrary and capricious manner."

---

6. Submitted issue number one was included in the court's charge at punishment as follows: Was the conduct of [appellant] that caused the death of the deceased, Gary D. McCarthy, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

In addressing the issue of responding "automatically" to the submitted issues upon a finding of guilt, this Court has stated:

More to the point is the question whether finding of guilt would 'automatically' dictate a result in the mind of the venireman as to special issues, without consideration of the guilt evidence as it relates particularly to resolution of those issues. For only upon manifesting an inability, once the issue of guilt has been resolved against the accused, *to reconsider guilt evidence in the particular context of special issues,* has a venireman demonstrated himself unable objectively to follow the law.

*Gardner v. State,* 730 S.W.2d 675, 680 (Tex.Cr.App.1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (emphasis in original). Accordingly, the crucial consideration is whether the veniremember is able to re-examine the evidence of guilt in the context of the submitted issues.

Appellant alleges that Cowan's failure to distinguish between "intentional" and "deliberate" in the context of the first submitted issue, would lead Cowan to automatically respond in the affirmative upon a finding of guilt. Contrary to appellant's contentions, Cowan repeatedly agreed that he could distinguish between "intentionally" and "deliberately" and that deliberately means something more than intentionally. He stated that if the State only proved intent, then "Question No. 1 hasn't been fulfilled."

With respect to the second submitted issue, appellant claims that Cowan's testimony that he believed there to be a greater likelihood a guilty party would commit a future crime than a person who had never committed a crime demonstrated that Cowan would automatically answer submitted issue number two in the affirmative upon a finding of guilt. However, Cowan only testified that there was a "possibility" that he "could" answer in the affirmative based only upon a guilty finding. He did not state that he would automatically respond in that manner. In addition, as the State correctly points out, the facts and circum-

stances of a capital offense alone, if particularly heinous in nature, *can* be sufficient to support an affirmative response to the second submitted issue. *Harris v. State,* 738 S.W.2d 207, 225 (Tex.Cr.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987); *but see Smith v. State,* 779 S.W.2d 417, 420 (Tex.Cr.App.1989) (nature of offense alone was here insufficient to prove future dangerousness).

■ In discussing the third submitted issue, Cowan was asked to give an example of circumstances in which provocation would exist. The only example Cowan could think of was one involving self defense. Appellant contends that this testimony reflects that Cowan would automatically answer the third issue in the affirmative is unfounded. The fact that Cowan could only think of one situation in which there would be provocation within the scope of submitted issue three does not demonstrate unacceptable bias. *See Harris v. State,* 784 S.W.2d 5, 23–24 (Tex.Cr. App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); *McCoy,* 713 S.W.2d at 951 (venireman's inability to conceive of a situation where they would respond yes or no to a submitted issue is not grounds for reversal).

■ There is ample evidence in the record to support the trial court's decision to overrule appellant's challenge against Cowan based upon his views concerning the submitted issues. Cowan testified that he would have to be convinced beyond a reasonable doubt on all three submitted issues, that he would keep an open mind to full range of punishment and that he would follow the "guidelines for me as a juror." We hold the trial court did not err in finding that Cowan's testimony as a whole showed that he would be able to "reconsider guilt evidence in the particular context of special issues".

We also find no basis in the record supporting appellant's allegations that Cowan would impose the death penalty in an "arbitrary and capricious manner". Appellant does not point to any specific testimony in support of his contention, except to assert Cowan maintained an opinion that the sub-

mitted issues do not serve as barriers to the death penalty. We do not find support for appellant's contentions in the record. Appellant's sixth point of error is overruled.

 In points of error seven and eight, appellant alleges that the trial court erred in overruling his challenges for cause with respect to venirepersons Samuel Carl Joiner and Judy Lee Smith Woods on the ground that they would each answer submitted issue number two "yes" in the event of a finding of guilt. Because appellant failed to preserve any error for review with respect to venireperson Smith, we will only address appellant's claims with respect to Joiner.[7]

Although the record reflects that Joiner expressed initial reservations with respect to the second submitted issue, he ultimately testified that he would consider all of the evidence presented and require the State to meet its burden on each submitted issue. In addition, although Joiner agreed it would be hard not to assume that a guilty party would be capable of committing another crime he nevertheless testified that he could remain open minded in considering the facts and circumstances. We hold, in light of his testimony taken as a whole, the trial court did not abuse its discretion in overruling appellant's challenge against Joiner. Appellant's seventh and eighth points of error are overruled.

 In his ninth point of error, appellant claims the trial court erred in overruling his challenge for cause against venireperson Roni Allen, alleging that her answers regarding submitted issues one and two[8] indicated that she maintained a bias that would impair the performance of her duties as a juror. Specifically, appellant points to Allen's testimony that upon a finding of guilt, she would automatically answer submitted issues one and two in the affirmative. Appellant also claims that Allen's testimony that she would presume a defendant had intent to kill if it were proven that he had a firearm in the course of committing a robbery, demonstrates that she would effectively dispense with the State's burden to prove intent beyond a reasonable doubt. The State argues that Allen was sufficiently rehabilitated by the trial court which questioned Allen further on submitted issue number one.[9]

Review of the record shows that venireperson Allen agreed with the defense counsel that if the State proved "that when the defendant killed the deceased, he acted with specific intent to kill, then, that would be enough for [her] to answer question No. 1 yes, that he did it deliberately and with a reasonable expectation that death would result." However, the trial court specifically questioned her on this issue and solicited contrary responses, as did the State. In response to questions from the court, Allen agreed that upon a finding of guilt, she would re-examine the evidence "to determine whether or not it was, in addition to the specific intent, it was also a deliberate act." Allen also testified she would presume all three submitted issues to be "no" until proven otherwise and also that she would "go strictly with the evidence" in answering the submitted issues.

 Great deference is given to the rulings of the trial judge who was present to observe the demeanor of the prospective

---

7. After the trial court overruled appellant's challenge for cause against Woods, appellant elected not to use a peremptory challenge against her even though he had only used five of his challenges. Accordingly, appellant failed to preserved any error for review. *Long v. State,* 823 S.W.2d 259, 264 (Tex.Cr.App.1991), *cert. denied,* 60 U.S.L.W. 3879 (1992); *Harris v. State,* 790 S.W.2d 568, 581 (Tex.Cr.App.1989).

8. Appellant's ninth point of error only makes allegations regarding Allen's responses to special issue number one; however, the text of appellant's brief sets forth arguments pertaining to Allen's responses to special issue number two as well. We will assume that appellant intended to include a complaint regarding Allen's responses to special issue number two in his ninth point of error.

9. The State also contends that the hypotheticals described by defense counsel in soliciting answers regarding the special issues gave rise to misleading responses. We will not address this contention since we conclude, even assuming the hypotheticals to be legally accurate, the subject venireperson was adequately rehabilitated.

juror. *Fuller*, 827 S.W.2d at 924; *Mooney v. State*, 817 S.W.2d 693, 701 (Tex.Cr.App. 1991). Particularly when a venireperson's views are unclear or conflicting is the "trial judge in a unique position to determine whether those [views] would prevent or substantially impair the venireperson's performance as a juror." *Farris*, 819 S.W.2d at 501; *see also Fuller*, 827 S.W.2d at 924; *Mooney*, 817 S.W.2d at 701. Here, the trial court focused its attention on Allen's responses pertaining to submitted issue number one, choosing to specifically question her in this regard. Although some of Allen's testimony indicated that she would answer submitted issue one "automatically" in the affirmative, the record contains sufficient testimony to the contrary to hold that the trial court could reasonably have found that her testimony as a whole did not reflect a bias against the law. *See Farris*, 819 S.W.2d at 501.

Appellant also claims that Allen would automatically answer submitted issue number two in the affirmative upon a finding of guilt. When questioned by defense counsel on the second issue, Allen agreed that if the State proved that the defendant was guilty as alleged in the indictment, she would answer question number two in the affirmative. Conversely, in response to subsequent questioning by the State, Allen agreed that she would consider each submitted issue as "serious barriers to the death penalty" and would answer no unless the State met its burden of proof. Allen also agreed that she would not automatically answer the submitted issues in the affirmative upon a finding of guilt and that her answers would depend on "[t]he whole picture." Given Allen's testimony as a whole, we cannot say that she indicated an "inability ... to reconsider guilt evidence in the particular context of special issues", and accordingly, we will defer to the ruling of the trial court. *Gardner*, 730 S.W.2d at 680.

With regard to Allen's testimony, complained of by appellant, that she would presume a defendant acted with intent to kill based upon the fact that he committed a robbery with a firearm, review of the record shows that Allen was obviously con-fused about the defense counsel's line of questioning in this regard. Regardless, this court has recognized that "the fact that a person is armed when entering the area of a crime or while committing a crime is itself of probative value in proving deliberate conduct." *Livingston v. State*, 739 S.W.2d 311, 339 (Tex.Cr.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). We have held that procuring and carrying a gun to a pre-planned robbery can constitute evidence of deliberateness. *Livingston*, 739 S.W.2d at 339; *Smith v. State*, 676 S.W.2d 379, 393 (Tex.Cr.App.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). We hold that the trial court did not abuse its discretion in overruling appellant's challenge for cause on these grounds. Appellant's ninth point of error is overruled.

In his tenth point of error appellant claims that the trial court erred in overruling his challenge for cause with respect to venireperson Margaret Gumma, based upon her answers regarding submitted issues one and two. Appellant also contends that the totality of Gumma's testimony indicates that she would be disqualified to serve under *Wainwright*.

The record reflects that Gumma had an understanding of the concepts underlying the submitted issues and would require the State to prove each one before responding affirmatively. Where any of Gumma's testimony reflected a bias against the law, when properly instructed on the law, she responded appropriately. In overruling appellant's challenge against Gumma, the trial judge stated that it was his observation that "her responses to the concepts as presented by both sides were careful and reasoned responses" and that she was a "conscientious citizen" who would "diligently, conscientiously and faithfully, not only listen to the evidence, but with fidelity to her oath, follow the law to the nth degree." Appellant's tenth point of error is overruled.

Appellant alleges in his eleventh and twelfth points of error that the trial court erred in overruling his challenges for cause

against veniremembers Terry Farrar and Jo Ann Brooks, based upon their testimony pertaining to submitted issue number one. Appellant claims Farrar and Brooks should have been excused because they were unable to distinguish between the terms "intentional" and "deliberate" and consequently would automatically answer the first submitted issue in the affirmative upon a finding of guilt.

▮▮▮▮▮ Appellant specifically argues that Farrar would automatically respond affirmatively to the first submitted issue based upon his testimony that carrying a loaded gun in the commission of a robbery would evidence deliberate conduct. Farrar actually testified that taking a loaded gun to a robbery evidences that the defendant is "going prepared" and that there is "some thought process there that I would tie into deliberately." [10]

As we stated previously in this opinion, evidence that a defendant carried a loaded gun with him in the commission of a robbery is probative of whether the defendant acted deliberately. *See Livingston*, 739 S.W.2d at 339. Furthermore, review of the record shows that Farrar clearly recognized a difference between the terms "intentionally" and "deliberately", testifying that "intentional shows less thought process before doing it. Deliberate shows more." Appellant's eleventh point of error is overruled.

▮▮▮ With respect to venireperson Brooks, the record reflects the existence of some confusion regarding her understanding of the two terms. When responding to questions from defense counsel, Brooks stated that she would automatically answer the first submitted issue in the affirmative upon a finding of guilt. When questioned by the State, Brooks testified that she would *not* automatically answer the submitted issue, and agreed that she would require the State to prove it. Because of Brooks' apparent confusion and vacillation, the trial judge further instructed and questioned her on the distinction between the terms. In response to the court's inquiries, Brooks consistently indicated that she grasped the distinction between the terms and agreed that she would hold the State to its burden of proving deliberate conduct in order to answer the first issue in the affirmative.

As previously stated, when presented with a prospective juror whose testimony is "vacillating" or "equivocating," we will defer to the trial judge who had the opportunity to observe and evaluate components that are insightful to the juror's views but which are not reflected on the face of the record, such as demeanor, inflection and expression. *E.g., Fuller*, 827 S.W.2d at 924; *Farris*, 819 S.W.2d at 501. While it is true that Brooks' testimony evidenced some confusion in distinguishing between "intentional" and "deliberate" conduct, she ultimately agreed that there was a difference between the terms and that she would require the State to prove that the defendant acted "deliberately" before responding affirmatively to submitted issue number one. Based upon Brooks' testimony as a whole, we hold the trial court could reasonably have concluded that her views, although somewhat vacillating, would not "prevent or substantially impair" her role as a juror. Appellant's point of error number twelve is overruled.

---

10. Appellant also points to Farrar's testimony given in response to the following question:

> Q. ... And if the evidence showed that a defendant, to whatever extent there was a *planning of the robbery*, at least, acquired a gun, loaded the gun, and *prepared for the robbery* to that extent, went with that loaded gun to the robbery, and in the course of the robbery, *specifically* and intentionally took the life of another person, do you feel that *planning that went into providing himself with the gun*, loading the gun, and going to the robbery, *prepared to do whatever was neces-*

> *sary*, would be sufficient to show deliberation of a kind of deliberation that would answer that question yes for you? ...
> A. Yes.

(emphasis added). Appellant claims that Farrar's testimony here evidences that he would find deliberate conduct existed based only upon evidence that a defendant "obtained a firearm, loaded it, and went to a robbery." However, we note that the question posed by defense counsel incorporates conduct and concepts other than merely obtaining a gun and taking it to a robbery.

Appellant alleges in point of error thirteen that the trial court erred in overruling his challenge for cause against venireperson Theresa Moore based upon her testimony pertaining to submitted issue number two.[11] Appellant claims that Moore's testimony indicated that she was so confused about submitted issue number two that she would only be able to respond affirmatively.

■ Moore initially agreed with defense counsel that upon a finding of guilt she would answer issue two in the affirmative. However, upon further instruction and questioning by the State, Moore agreed that she would presume submitted issue number two to be no until the State presented enough evidence to prove otherwise. She agreed that there may be fact situations where a defendant found guilty of capital murder would not be a continuing threat to society. When asked by defense counsel why she had changed her views about the second submitted issue, Moore stated that initially she had not been considering the "broad spectrum of how murders can take place." For the remainder of her testimony Moore was unequivocal in stating that she would not answer the second submitted issue "yes" automatically upon a finding of guilt. Any further confusion expressed by Moore was not about the submitted issue itself or the law, but was in response to the confusing line of questioning by the attorneys.

Although Moore's initial testimony indicated that she would respond automatically in the affirmative to submitted issue two upon a finding of guilt, the record shows that she was rehabilitated by the State, and thereafter consistently testified that she would hold the State to its burden of proving the submitted issue. We hold the trial

court did not abuse its discretion in denying appellant's challenge for cause. *See, e.g., McCoy,* 713 S.W.2d at 951. Appellant's thirteenth point of error is overruled.

In points of error fourteen, twenty and twenty-one appellant argues that the trial court erred in overruling his challenge for cause against venireperson Joan Smyth because of her alleged inability to consider the full range of punishment and distinguish between the terms "intentional" and "deliberate" in the context of the submitted issues.[12] Appellant claims that the totality of Smyth's testimony reflected that she was so biased in her views that she would be prevented or impaired in performing her duties as a juror.

As we stated previously in this opinion, when assessing a potential juror's capacity to consider the full range of punishment, we review the testimony as a whole and determine whether the questioned juror's view of the range of punishment amounts to bias or prejudice against the law. *E.g.; Pyles,* 755 S.W.2d at 103.

■ When questioned by defense counsel as to whether she would be willing to assess the minimum five year sentence in "a murder case ... regardless of the facts and circumstances," Smyth replied that she did not believe that she would. Later, when reminded by the State of the many possible fact scenarios that might be presented in a murder case, Smyth agreed that she would keep an open mind to the entire range of punishment, even to a five year sentence, if warranted by the facts. Based upon all of Smyth's testimony concerning the range of punishment, we hold that the trial court did not abuse its discretion in overruling appellant's challenge for cause

---

11. Although appellant complains in his thirteenth point of error about Moore's testimony concerning both special issues one and two, his trial objection did not point to special issue number one and he failed to address special issue number one in the text of his brief. Therefore, we will only address Moore's testimony with regard to special issue number two.

12. Appellant's fourteenth point of error actually complains of Smyth's responses to special issues

one and two. However, review of the record reflects that appellant did not make any objections at trial to Smyth's responses as they related to the second special issue. Therefore, appellant has not preserved any error with respect to the second special issue. We also note that appellant's brief does not point to any of Smyth's testimony concerning the second special issue.

on the grounds that Smyth was unable to consider the full range of punishment.

■ Appellant claims that Smyth should have been excused because she was unable to "articulate any real difference between 'intentional' and 'deliberately' in special issue no. 1." When asked to describe the difference between the terms, Smyth testified:

A. Well, deliberately and intentional kind of seem the same until you think about it a little bit. My definition of deliberate would be, you know, planned in a purpose, that would be my ultimate goal, deliberate. Intentional means that may or may not, you know, may or may not depending on the circumstances. I intend to go to town, but I may not get there. My intentions may be different than what actually happens. I intend to pay my bills on time, but for some reason or another, I don't get—you know.

Q. What if you intend to pay your bills on time, and do, in fact, pay them on time? Would that mean to you that it was not only intentional but that it was deliberate?

A. Well, that's true. I mean in that concept, that's the way I am. I intend to and I deliberately do that. But—

Q. You see—

A. Yes, I see what you're saying.

Q. In the context of a capital murder case if the intent is not carried out, we're not here to begin with?

A. Yes, right.

Q. But, still with that, do you believe you see a difference in the two concepts?

A. Yes, I believe I do, but I'm not that articulate to come up with a—

Although Smyth clearly had trouble articulating the distinction between the terms, she stated repeatedly and consistently that she did recognize a difference between the terms and agreed that she could conceive of a situation where she might find that a defendant acted intentionally but not deliberately. Based upon Smyth's testimony as a whole, we cannot say that the trial court abused its discretion overruling appellant's challenge for cause with respect to Smyth's answers on the first submitted issue. Appellant's points of error fourteen, twenty and twenty-one are overruled.

In his twenty-second point of error, appellant claims the trial court erred in denying his request for an additional peremptory strike to exclude venireperson Smyth. Appellant did not cite a single authority or point to any facts in support of this bare assertion and the State did not address this point of error. We will address this point of error although not properly briefed.

■ It is clearly within the discretion of the trial court to grant additional peremptory challenges upon exhaustion of the statutory number of strikes. No abuse of discretion will be found for overruling a defendant's request for additional strikes in the absence of "wrongdoing" on the part of the trial court. *Thomas v. State*, 701 S.W.2d 653, 658 (Tex.Cr.App.1985). Such wrongdoing may exist if the trial court has improperly overruled a defendant's challenge for cause and the defendant has accordingly used a strike on a juror who is subject to a challenge for cause. *Id.* We do not in this appeal hold that any of appellant's challenges for cause were improperly overruled. In the absence of any showing of wrongdoing on the part of the trial court, it was not error for the court to refuse appellant's request for additional challenges. Appellant's point of error twenty-two is overruled.

In points of error fifteen and sixteen, appellant claims that the trial court erred in excusing venirepersons Waldo Cecil and Melissa Kelly without a challenge for cause or submission by either party. Appellant claims that such action constituted fundamental error and therefore no objection was needed. The State contends that appellant's challenges for cause were presumed. The State further asserts that even if the trial court did improperly dismiss the prospective jurors, it was not fundamental error and appellant's failure to object waived any error.

The record is clear that counsel for the defense did not expressly challenge either prospective juror for cause. Although it appears that they were both excused under the assumption that the defense intended to submit them for cause,[13] we will assume, as appellant claims, that appellant did *not* intend to submit them for cause and the trial court excused them sua sponte. We need not, however, reach the issue of whether the trial court's dismissal was improper, because even in the event of improper sua sponte dismissal of a prospective juror, the error is waived in the absence of an objection. *Warren v. State,* 768 S.W.2d 300, 303 n. 2 (Tex.Cr.App.1989), *cert. denied,* 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599; *Mays v. State,* 726 S.W.2d 937, 950 (Tex.Cr.App.1986), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). Here, counsel for appellant was present at the time Cecil and Kelly were excused, but did not object to their excusals. Accordingly, we hold that appellant waived the error[14], if any, and overrule points of error fifteen and sixteen.

In his seventeenth point of error, appellant claims the trial court erred in excusing venireperson Roberta Wade because the State did not set forth the reasons for its challenge. Appellant also claims Wade was improperly excluded under *Witherspoon* because she did not exhibit any bias or prejudice.

Article 35.16 provides that "[a] challenge for cause is an objection made to a particular juror, *alleging some fact* which renders him incapable or unfit to serve on the jury." Article 35.16 V.A.C.C.P. (emphasis added). Clearly, under article 35.16, a challenge for cause, by definition, should allege facts explaining the basis of the challenge. *Garcia v. State,* 626 S.W.2d 46, 56 (Tex.Cr. App.1981). However, where the reason that the juror is incapable or unfit to serve is obvious to the court and opposing counsel and there is no indication that the parties were unaware of the grounds for the challenge, we hold that facts need not be alleged in making the challenge. *See Miller v. State,* 741 S.W.2d 382, 387 (Tex.Cr. App.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988).

The reasons for the State's challenge are apparent from Wade's testimony. Immediately prior to each of the two times the State submitted Wade, Wade testified that she might feel compelled to abstain from answering the special issues in order to avoid imposition of the death penalty or that she would be unable to take the juror's oath in order to avoid imposition of the death penalty. It is clear from the nature of the questions asked by defense counsel after the State's submission that the defense was aware of the grounds for the

---

13. Venireperson Cecil expressed extreme views in favor of the death penalty during the State's questioning, at one point speaking favorable of the penal system in Malasia "where the death penalty is handed down automatic without appeal if you're caught with a handgun." At the conclusion of questioning, the prosecutor stated that he assumed the defense would submit for cause. Although counsel for the defense did not directly respond to the State's assumption, no objection was made to Cecil's dismissal and the defense did not ask for the opportunity to question him at the conclusion of the State's questioning. Even though appellant did not expressly state for the record that he submitted Cecil for cause, it was apparent to all parties that a submission was desired based upon Cecil's extreme views.

Venireperson Kelly indicated on her jury questionnaire that she favored public hangings. In response to questioning by the State, Kelly agreed that she would be unable to assess anything less than the death penalty upon a finding of guilt for a robbery/murder. The State then concluded it's questioning, stating, "[t]hat's all we have. We have no objection to the submission, judge." Thereupon, the Court excused venireperson Kelly without objection from any party. The defense did not seek to question Kelly following the State's questioning. Although counsel for the defense did not expressly submit Kelly for cause, it is apparent from the State's remarks and the context in which they were made, that defense counsel was in favor of submitting Kelly for cause.

14. We are aware of no authority, nor has appellant pointed to any authority, in support of appellant's claim that the trial court's sua sponte dismissal of a juror amounts to fundamental error, dispensing with the need to object. To the contrary, as discussed above, this court has consistently held that in the case of sua sponte dismissal of a prospective juror, any error is waived in the absence of an objection. *Warren,* 768 S.W.2d at 303 n. 2; *Mays,* 726 S.W.2d at 950.

State's challenge. Defense counsel's awareness of the grounds for the challenge was also evidenced by its objections to the court's sustaining of the State's challenge, which specifically addressed the issue of Wade's ability to take the juror's oath. We hold that the grounds supporting the State's challenge for cause were obvious to the court and to opposing counsel and therefore the State's challenge was sufficient even in the absence of factual allegations. We now address whether the trial court erred in sustaining the State's challenge.

■ Review of Wade's voir dire testimony reflects that she was so uncomfortable with the notion of serving on a jury in a capital case that she stated she would feel compelled, if on such jury, to abstain from responding to the submitted issues. Although Wade agreed with defense counsel that, if on the jury, she would answer the issues truthfully as shown by the evidence and would not violate her oath, she later testified repeatedly that she would be unable to take the juror's oath since it would compel her to vote and would not allow abstention. Following is a portion of Wade's voir dire testimony:

Q. [the State] ... And therefore, I gather, from what you have told us, that you could not take that oath because you cannot give us that assurance that your conscience would not insist that you abstain if that's what it came down to?

A. [Wade] Well, these three questions, I can answer because if someone proves to me these answers ought to be yes, I can say yes. But what I'm saying is, I don't know that I want to be put in this position of having to say yes to these things and having the outcome be the death of someone. So, you're probably right in that I can't take that oath, because I'm still thinking of the bottom line.

\* \* \* \* \* \*

Q. ... only you can tell us if you can stand before this judge and take that oath to render a verdict strictly according to the evidence or if you're saying, judge, I cannot take the oath, because I can foresee the possibility of being put in the position of having to abstain to be true to my conscience?

A. Okay. I can foresee that possibility.

Q. Okay. All right. Therefore you cannot take the oath?

A. I think not.

\* \* \* \* \* \*

Q. ... If the honest answer is, you know, not only do I not want to be on the jury but I cannot take that oath because I realize that you may well have an intellectually—intellectual proof might be there right down the line, and yet I may have to literally tell the other 11 jurors, I abstain. If that possibility exists, then I submit that you are really not in a position to take the oath?

A. I'm not.

Q. Fine. You're telling us firm and fixed, I cannot take the oath?

A. I can't when I know what the bottom line is.

A juror who states that they are unable to take the juror's oath because to do so would potentially place them in the position of having to impose the death penalty is subject to a challenge for cause. *Goodwin v. State*, 799 S.W.2d 719, 731–32 (Tex.Cr. App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991). In *Goodwin*, as here, we were presented with a venireperson who stated that she would be unable to take the oath, but would follow it if compelled to take it. There, we said that:

When a venireperson states that her convictions are so strong that she cannot take an oath, knowing that a death sentence is a possible result at trial, the venireperson is subject to challenge for cause. If the venireperson specifically states that she would be unable to take the oath required of a juror, then that venireperson has made it "unmistakably clear" that she could not be trusted to "abide by existing law" and "to follow conscientiously the instructions" of the trial judge.

*Id.* (citations omitted). We further stated that "when faced with the ambiguous voir dire record of a venireperson who indicates

both an inability to follow the law because of her views on the death penalty, and an ability to follow her oath and the law as instructed by the court, great deference should be given to the decision of the trial judge." *Id.*

Veniremember Wade's testimony indicated that she would attempt to avoid her duties by either refusing to take the oath or abstaining from voting.[15] Viewing her testimony as a whole and given Wade's pronounced resistance to accept juror responsibility to the point of abstention from voting if selected to serve, we hold the trial court did not abuse its discretion in granting the State's challenge. *Goodwin.* Point of error seventeen is overruled.

In point of error eighteen, appellant challenges the trial court's excusal of prospective juror Steven DeJohn Hart on the grounds that he was a vacillating juror.[16] Appellant contends that nothing under article 35.16 V.A.C.C.P. allows a juror to be challenged for cause solely because he is vacillating or equivocating in his answers. Appellant also claims Hart did *not* vacillate in his responses.

■ During voir dire, Hart testified at least five times that he *would* automatically respond in the affirmative to the first submitted issue upon a finding of guilt. Hart also testified at least five times that he *would not* automatically respond in the affirmative to the first submitted issue upon a finding of guilt. Hart further testified approximately five times that he would automatically answer the second and/or third submitted issues in the affirmative upon a finding of guilt. However, he testi-

fied at least twice that he could envision a scenario where he would not answer all of the submitted issues in the affirmative. Despite his agreement at least five times that he would automatically answer the first submitted issue in the affirmative, Hart testified twice that in his opinion the State would *never* be able to offer enough evidence to prove deliberate conduct. Hart indicated on his questionnaire that he was opposed to the death penalty and testified in response to questioning by the State that he would never answer the submitted issues in the affirmative because of his opposition to the death penalty. However, he apparently abandoned those beliefs in responding to voir dire questions by defense counsel, testifying that he could answer the issues in the affirmative, if proven, even though the death penalty would be imposed. In granting the State's challenge for cause, the trial judge concluded that "[w]hile a number of Mr. Hart's responses were totally consistent with the lawful requisites of a juror in a death penalty case, the court found itself, as I'm sure counsel did, troubled extensively by the vacillation that Mr. Hart demonstrated with regard to counsel's questions."

■ A prospective juror is subject to a challenge for cause where he is so vacillating in his responses as to create the impression that he would be "unable to faithfully and impartially" answer the submitted issues. *Foster v. State,* 779 S.W.2d 845, 851 (Tex.Cr.App.1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990); *see Clark v. State,* 717 S.W.2d 910, 914–15 (Tex.Cr.App.1986), *cert. denied,* 481

---

**15.** We note that venireperson Wade's testimony is distinguishable from the prospective juror's testimony at issue in *Lackey v. State,* 638 S.W.2d 439 (Tex.Cr.App.1982) (opinion on rehearing). Like Wade, the challenged venireman in *Lackey* testified that he would not be able to take the juror's oath. *Lackey,* 638 S.W.2d at 474–75. We held that the juror was "prematurely and improperly excused" because he had not testified that his opposition to capital punishment was so strong that he would disregard the evidence and answer the issues so as to avoid imposition of the death penalty. *Id.* at 476. Here, although venireperson Wade also did not testify that she would respond to the issues so as to avoid imposition of the death penalty, she testified

that she might abstain from voting, essentially accomplishing the same objective, that is, avoidance of her participation in imposing the death penalty. When a venireperson testifies that they would abstain from voting in order to prevent imposition of the death penalty, they are subject to a challenge for cause. *Long,* 823 S.W.2d at 266.

**16.** Hart was submitted for several other reasons identified by the State, but we will not address each ground since we hold that the State's submission on the grounds that he was vacillating was sufficient for the trial court to grant the challenge.

U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987). In addressing the issue of the vacillating venireperson, we have stated that "[w]hen the record of voir dire is unclear, 'there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.'" *Foster,* 779 S.W.2d at 851 (quoting *Wainwright*).

Review of prospective juror Hart's testimony demonstrates substantial vacillation in his responses regarding the submitted issues and his views on the death penalty and how they would impact his responses. We will defer to the trial court's finding that venireman Hart would be "unable to faithfully and impartially apply the law" and hold that there was no abuse of discretion in such determination. *Foster,* 779 S.W.2d at 851. Appellant's point of error eighteen is overruled.

■ In his nineteenth point of error appellant claims the trial court erred in overruling his challenge for cause against venireman Charles Bridges on the grounds that Bridges would give more credibility to the testimony of a police officer than the testimony of another person. The State contends that because Bridges was under consideration as an alternate juror only and since the alternate juror selected was dismissed from his duties prior to the deliberation of the panel, no harm resulted from the trial court's ruling, even if it was in error. We agree with the State.

Each of the parties was given one peremptory strike during examination for selection of an alternate juror. Bridges was the first venireperson examined for the position of alternate juror. Following the court's overruling of appellant's challenge, appellant exercised a peremptory challenge and Bridges was excused. The next venireperson examined, Mary Austin, was selected to serve as the alternate juror. Appellant did not attempt to challenge Austin for cause or object to her selection in any way. Immediately prior to dismissal of the jury for deliberation on the guilt/innocence portion of the trial, the court excused Austin from service.

■ Selection of alternate jurors is treated as distinct and separate from selection of the primary panel. Following selection of the required number of jurors for the panel, the parties' unused peremptory strikes are essentially wiped out and each party is given the designated number of strikes for use in selecting one or more alternate jurors. Article 35.15(d) V.A.C.C.P. We see no reason why the rules for preserving error on challenges for cause during selection of an alternate juror should differ from those applicable during the primary panel selection. In order to preserve error on a challenge for cause, an appellant must show

1. The voir dire of the individual venireperson was recorded and transcribed.

2. The appellant at trial asserted a clear and specific challenge for cause clearly articulating the grounds therefore.

3. After the challenge for cause is denied by the trial court, appellant uses a peremptory challenge on that juror.

4. All peremptory challenges are exhausted.

5. When all peremptory challenges have been exhausted, appellant makes a request for additional peremptory challenges.

6. Finally, the defendant must assert that an objectionable juror sat on the case. The appellant should point out to the trial court that he is being forced to try the case with a juror seated whom he would have exercised a peremptory challenge had he had one.

*Harris v. State,* 790 S.W.2d 568 (Tex.Cr. App.1989); see also *Cumbo v. State,* 760 S.W.2d 251, 254 (Tex.Cr.App.1988); *Bell,* 724 S.W.2d at 796; *East v. State,* 702 S.W.2d 606, 612 (Tex.Cr.App.1985), *cert. denied,* 474 U.S. 1000, 106 S.Ct. 418, 88 L.Ed.2d 368; *White v. State,* 629 S.W.2d 701, 707 (Tex.Cr.App.1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982). In the absence of such a showing, the appellant fails to demonstrate harm.

Clearly, the first three requirements necessary to preserve a challenge for cause were met. In addition, appellant exhausted

his single peremptory challenge by striking venireman Bridges. However, at no time during or following Austin's examination did appellant request an additional peremptory strike. Appellant also fails to point to an objectionable alternate juror since he made no objection to the only alternate seated, Austin. Moreover, although Austin was seated as a juror with the panel during the presentation of evidence at the guilt/innocence portion of the trial, she did not participate in the deliberations and therefore, in the absence of evidence to the contrary, she could not be said to have contributed to appellant's conviction. Appellant's point of error nineteen is overruled.

In his twenty-third point of error appellant claims that the trial court erred in permitting the shackling of appellant during the voir dire, guilt/innocence and punishment portions of the trial, in the absence of evidence that appellant was a security threat. Appellant relies on several decisions of this court which held that reversible error exists where a shackled defendant is brought into the presence of the jury unless the record demonstrates a good and sufficient reason for taking such measures. Appellant points out that the only explanation given by the court for the shackling was that it was done "at the suggestion and request of Dallas County deputy sheriffs."

The State argues that the threshold issue in determining whether the court abused its discretion in allowing the shackling of appellant is whether the jury observed the physical restraint of appellant. The State directs us to statements made by the prosecutor for the record that the restraints were not visible from the area where the jury would be seated, that appellant's long pants would conceal the shackles and that a brief case or box could be placed in front of appellant's legs to further assure that the jury would not see the leg restraints. Since there is no evidence that the jury actually saw the restraints, the State argues, there is no reversible error.

When a defendant is viewed by the jury in handcuffs or shackles, his pre-

sumption of innocence is seriously infringed. *Long v. State*, 823 S.W.2d 259, 282 (Tex.Cr.App.1991). Only in rare circumstances is shackling called for, and in such event, the record must detail the grounds for such action. *E.g., Long*, 823 S.W.2d at 282; *Marquez v. State*, 725 S.W.2d 217, 228 (Tex.Cr.App.1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152. The trial judge must set forth with specificity the reasons supporting his decision to restrain the defendant. *See, e.g., Long*, 823 S.W.2d at 282; *Marquez*, 725 S.W.2d at 228. On appeal the role of this court is to determine whether the trial court abused its discretion in authorizing the restraint. *Long*, 823 S.W.2d at 282; *Marquez*, 725 S.W.2d at 227. Even if an abuse of discretion exists, reversal may not be called for if such abuse was harmless. *Long*, 823 S.W.2d at 283. In *Long v. State*, this court decided that in the absence of evidence that the jury actually saw the shackles, no reversible error exists. *Id.* There, the record was devoid of any evidence supporting the trial judge's decision to shackle the defendant. Although this court concluded that the trial court abused its discretion in shackling the defendant during his trial, we nonetheless held that, in the absence of evidence that the jury actually saw the shackles, the defendant was not harmed or prejudiced. *Id.*

In the instant case, the record reflects that appellant was restrained by a two foot chain cuffing his feet and attached to an ankle bracelet. Defense counsel objected to the restraints and pointed to the lack of evidence that appellant had acted in such a way as to justify the use of the shackles. In response, the prosecutor noted for the record that the leg restraints could not be seen from the gallery where the jury would be seated. The judge then stated:

Let the record reflect, that the court has occasioned the security of Mr. Cooks only after conferring with bailiffs assigned the responsibility of the safekeeping of not only Mr. Cooks, but attorneys, the court, spectators and jurors in this matter. And it was at the suggestion

and request of Dallas County deputy sheriffs assigned to the bailiff's division that the security means of Mr. Cook are being employed. They are not being utilized in any way to inflame or suggest anything to the jury, but out of abundance of prudence and caution, such a course of conduct is being pursued.

Although the court's statement alone does not evidence the existence of any "rare" circumstances justifying the need to shackle appellant, other portions of the record demonstrate the probable impetus for the Sheriff's Department's recommendation for the measures.[17] However, we need not decide whether the circumstances were sufficient to justify the. court's action, because, even if the trial court did abuse its discretion in allowing restraint of appellant, we cannot say that appellant was harmed thereby. Absent evidence that the jury actually saw the shackles, we will not conclude that the defendant has been harmed. *Id.* Here, as in *Long*, appellant does not direct us to any evidence in the record that the jury actually observed the shackles.[18] The prosecutor stated for the record that the restraints would not be visible to the jury. Defense counsel argued that during the voir dire examination

it would be necessary for each venireperson to pass in front of appellant, but he did not refute the State's contention that the restraints would not be visible. In the absence of any evidence in the record indicating that appellant's shackles were actually seen by the jury, we conclude appellant was not harmed. Point of error twenty-three is overruled.

■ In point of error twenty-four appellant claims the trial court erred in denying his request to call John Sherman, the Houston attorney representing accomplices and co-defendants Tracy Stallworth and Tony Harvey, to testify at the guilt/innocence phase of trial concerning a plea bargain entered into between the co-defendants and the State. Appellant further complains in point of error twenty-five that the trial court abused its discretion in denying appellant's oral motion for continuance to subpoena Sherman. The State contends that no error occurred in view of the testimony and cross-examination of Harvey, Fred Tinsley (Harvey's Dallas counsel)[19] and the prosecutor regarding the plea bargain negotiations, that appellant was not entitled to examine Sherman and that appellant's inability to cross-examine Sherman was due to his own failure to subpoe-

---

**17.** At punishment, Deputy Holley, a Dallas County Sheriff's Department deputy assigned to the Government Jail Center, testified that during appellant's incarceration at the Dallas County jail appellant had at least two violent outbursts in which he threatened to kill or injure jail personnel. There was other testimony at the punishment phase of trial that appellant was given to violent outbursts in which he became "uncontrollable". We also note that the record reflects that appellant was a large man, standing approximately six feet, three inches tall and weighing 250–260 pounds. It is likely that the Sheriff's Department urged the use of shackles due to appellant's large size and their experiences with his unpredictable temper. However, there is no indication on the record that any of these circumstances were made known to or brought to the attention of the trial judge prior to his ruling on the issue.

**18.** Upon objecting to the use of the restraints, defense counsel argued that it was prejudicial to the defendant to ask the prospective jurors whether they noticed the restraints because such questioning would further draw the restraints to their attention. However, as the State correctly pointed out in its brief, other avenues of inquiry were available to appellant,

such as a post-trial hearing in which appellant could have questioned each juror on whether they saw and were influenced by the shackling of the defendant. In addition, appellant could have entered into the record pictures of the courtroom, reflecting the location of appellant in relation to the jury. Although the trial judge stated that he intended to direct the bailiff take such pictures for the record, no such pictures were made part of the record.

**19.** During trial, the trial judge stated for the record that prior to trial John Sherman, the Houston attorney representing co-defendants Tony Harvey and Stacey Stallworth, appeared in chambers and personally notified the court that due to his trial schedule he might not be available to represent the co-defendants in the event they testified at appellant's trial. Sherman requested the court's permission for Dallas attorneys Royce West and/or Fred Tinsley to serve in his place if he was not available. The court expressed it's agreement with such arrangement. Apparently no written motions or orders were made with respect to this conversation.

na Sherman. The State further maintains that error, if any, was harmless since the plea arrangement was fully disclosed to the jury and appellant conducted cross-examination on the issue.

At trial the prosecuting attorney in Harvey's and Stallworth's cases, Hugh Lucas, testified that he had agreed with Sherman that if Harvey and/or Stallworth testified for the State in appellant's trial, the State would recommend a sentence of twenty-five years to life for a guilty plea for either or both Harvey and Stallworth, depending upon who testified. The co-defendants' Dallas counsel, Fred Tinsley, testified that he had spoken with Sherman and Harvey separately. Tinsley stated that both Sherman and Harvey told him that the State's offer was at least twenty-five years, but was open ended with respect to the maximum. Harvey testified that he had spoken directly with Lucas concerning the offer and that he was told that the State would agree to "no less than 25" and that he could get up to a life sentence. After Tinsley and Harvey testified, appellant requested that Sherman be called as a witness, contending that Sherman's testimony was "necessary to complete the record" on this issue.[20] The trial court denied appellant's request to call Sherman. Appellant then requested a continuance to subpoena Sherman, which was denied.[21] Following appellant's trial Harvey and Stallworth both plead guilty to the offenses of aggravated robbery and theft. Each was sentenced to twenty years for aggravated robbery and ten years for theft, to run concurrently, and the State dismissed its charges of capital murder against both co-defendants.

We have recognized that "it is a fundamental element of due process of law that an accused has the right to present his own witnesses to establish a defense." *Hardin v. State*, 471 S.W.2d 60, 62 (Tex.Cr.App. 1971); *see also Ex parte Scarbrough*, 604 S.W.2d 170, 174 (Tex.Cr.App.1980). Accordingly, appellant's request to call Sherman to the stand was undoubtedly proper, as Sherman's testimony as to the existence of an agreement with the State, bearing upon the bias of Harvey as a witness, would have been relevant to appellant's defense. However, we hold that the trial court's overruling of appellant's request to call Sherman was harmless in light of Harvey's, Tinsley's and Lucas' testimony on the existence of an agreement between the State and Harvey. The defense counsel extensively cross-examined Harvey, Tinsley and Lucas, whose testimony was all consistent on this issue. Appellant made no showing that Sherman's testimony would have differed from Harvey's, Tinsley's and Lucas' testimony in any material respect. The fact that Harvey's and Stallworth's indictments for capital murder were subsequently dismissed does not alone evidence the existence of agreement between the State and Harvey and/or Stallworth that was different than the agreement testified to by Harvey, Lucas and Tinsley at the time of appellant's trial. The testimony concerning the plea arrangement consistently maintained that the State had offered a minimum of twenty-five years and a maximum of a life sentence. Although the charges of capital murder were dismissed against Harvey and Stallworth, they were each sentenced to twenty years and ten years on charges of robbery and theft, sentences five years short of that testified to as the minimum offered by the

**20.** Appellant claimed that "neither Mr. Lucas nor Mr. Tinsley have been privy to the conversations between Mr. Harvey and Mr. Sherman. Only Mr. Harvey and Mr. Sherman know exactly what these conversations were...."

**21.** Appellant's oral "motion" for continuance following the court's ruling on appellant's request to call Sherman to the stand was as follows:

The Court: The defense request that the court cause Houston attorney Mr. Sherman to rep-

resent himself and be questioned prior to Mr. Harvey testifying before the jury is denied. Anything further?

[Prosecutor]: Not at this time, Your Honor.

[Defense counsel]: Your honor, may I assume that if the request were made the ruling would be the same if we asked this court for a continuance to issue a subpoena for Mr. Sherman?

The Court: Correct.

State. The State is within its rights to subsequently seek a lighter sentence than that offered in a plea arrangement, and the lighter sentences and the dismissals alone do not establish that the State was "withholding and misrepresenting the punishment" agreed upon in the plea bargain. Logically, the capital murder charges could not stand if the State kept its part of the bargain that the maximum punishment be life imprisonment. Also, in the absence of evidence that Sherman's testimony would differ materially from the testimony of Harvey, Lucas and Tinsley, we cannot say that appellant was harmed by the court's denial of appellant's request to call Sherman. Appellant's point of error twenty-four is overruled.

██ Following the court's denial of appellant's request to call Sherman to the stand, appellant stated: "Your honor, may I assume that if the request were made the ruling would be the same if we asked this court for a continuance to issue a subpoena for Mr. Sherman?" The trial judge replied in the affirmative. Appellant now claims the trial court abused its discretion in denying his motion for continuance. Even assuming appellant's in-court reference to the possibility of asking for a continuance amounted to a proper motion, we hold the trial court did not abuse its discretion in overruling appellant's motion. The granting of a motion for continuance is within the discretion of the trial court.[22] *See* Article 29.03 V.A.C.C.P. (criminal action *may* be continued upon sufficient cause shown in motion); Article 29.06(6) V.A.C.C.P. (sufficiency of motion for continuance shall be addressed to "sound discretion" of court and "shall not be granted as matter of right"). Here, appellant had ample time prior to trial to subpoena Sherman, but instead chose to rely upon the assumption that Sherman would be at trial to represent Harvey and Stallworth during their testimony. As stated above, Harvey, Tinsley and Lucas were all cross-examined by appellant and their testimony was consistent. Appellant has offered no evidence that Sherman's testimony would have differed in any way from the testimony of Harvey, Tinsley and Lucas. Tinsley testified that he had spoken with Sherman and that Sherman had told him that the plea arrangement was at least twenty-five years and open ended with respect to the maximum. In light of the consistent testimony given by Harvey, Tinsley and Lucas, Tinsley's testimony regarding his discussions with Sherman, appellant's failure to subpoena Sherman prior to trial and in the absence of any evidence that Sherman's testimony would have revealed a different plea arrangement, we cannot say that the trial court abused its discretion in denying appellant's motion. Appellant's twenty-fifth point of error is overruled.

██ In points of error twenty-six through twenty-nine appellant claims the trial court erred in overruling his challenge to the array and motion to quash the jury panel based upon the court's noncompliance with various statutory requirements for the selection of jury panels.[23] Appel-

22. Article 29.06 V.A.C.C.P. sets forth six matters that must be set forth in a defendant's first motion for continuance on account of the absence of a witness, including a statement as to the diligence that has been used to procure the attendance of the witness. In addition, article 29.08 V.A.C.C.P. provides that "all motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." Appellant's motion was neither written nor sworn to and did not make the six averments set forth in Article 29.06 V.A.C.C.P..

23. Specifically, appellant complains of the following violations:
(1) The list provided appellant, consisting of 2,000 names of persons summoned for jury service for all of the courts in Dallas County, does not satisfy the requirements of article 34.04 V.A.C.C.P., that a capital defendant be served with a list of names of persons summoned for service for the week his case is set;
(2) Prospective jurors were excused in violation of article 35.03 V.A.C.C.P. and Section 62.110 of the Government Code;
(3) The large number of jurors who failed to respond to their summons impaired appellant's ability to select from a true cross-section of the community and therefore "deprive[d] him of his right to trial by a fair and impartial jury as guaranteed by the United States Constitution and Texas Constitution";
(4) The officer who summoned the jury did so "wilfully ... with a view to secure conviction"; and

lant contends that pursuant to this court's decision in *Fontenot v. State*, 379 S.W.2d 334 (Tex.Cr.App.1964), no showing of injury is required for reversal. Even so, appellant claims, he was harmed by the noncompliance as evidenced by the fact that upon exhausting all of his peremptory strikes, an objectionable juror was seated. The State contends that the Dallas County jury selection procedures were not violative of the governing provisions and even if they were in violation of the controlling statutes, there was no reversible error since appellant failed to show that " 'the officer summoning the jury' did so with a view towards 'securing a conviction or an acquittal' " as required by article 35.07 of the Code of Criminal Procedure. The State also asserts that appellant's reliance on *Fontenot* is misplaced since that case dealt with a request for a second jury shuffle and is not applicable to all the other practices regarding selection of the jury panel.

We agree with the State that *Fontenot* is not controlling. In *Fontenot* this court

(5) The use of a general jury panel in a capital case violates Section 62.016 of the Government Code.

Although appellant made other objections at trial, these are the only issues preserved for review by appellant's written motion to quash the jury panel.

**24.** We note that this court recently held that a defendant is entitled to only one jury shuffle, either at the request of the State or the defendant. *Jones v. State*, 833 S.W.2d 146, 149 (Tex. Cr.App.1992).

**25.** In *Fontenot*, holding that the defendant need not demonstrate injury, we referred to Branch's 2nd Ed., Vol. 1, Sec. 543 and quoted the following language therefrom:

An infringement of the jury law will require a reversal without reference to whether injury to the defendant is shown. When the statute prescribes the method of procedure and compliance therewith is promptly and timely demanded, the trial court is not authorized to permit infringements of the jury law.

*Fontenot*, 379 S.W.2d at 335. Although the quoted language is broad enough to apply to *all* violations of jury law and requires reversal without any showing of harm, all but two of the seven cases citing *Fontenot* to date have been jury shuffle cases. *See, e.g., Trevino v. State*, 523 S.W.2d 718 (Tex.Cr.App.1975); *Griffin v. State*, 481 S.W.2d 838, 839 (Tex.Cr.App.1972). When addressing violations for jury selection procedures we have *not* applied the broad lan-

held that it was reversible error for the trial court to grant the State's request for a second jury shuffle, even in the absence of a showing of harm.[24] *Fontenot*, 379 S.W.2d at 334. Appellant would have us apply *Fontenot*'s holding that no harm need be shown, to jury selection practices in general, not just to errors involving requests for a jury shuffle. Although the holding in *Fontenot* does not indicate that it is applicable only to jury shuffle cases, subsequent cases decided by this court involving challenges to the array based upon other jury selection procedures have not followed *Fontenot* and *have* required a showing of harm.[25] Furthermore, this court has previously addressed imperfections in Dallas County jury selection procedures for the trial of a capital offense, concluding that "a successful challenge to a criminal conviction based upon noncompliance with jury selection procedures ... requires the defendant to establish that such noncompliance compromised the fairness of

guage in *Fontenot* and have consistently required a showing of harm or prejudice for reversal. *Neal v. State*, 689 S.W.2d 420, 424 (Tex. Cr.App.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985) (improper jury selection procedures did not call for reversal in absence of showing of harm); *Porter v. State*, 623 S.W.2d 374, 377 (Tex.Cr.App.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982) (no injury as a result of court's failure to grant request for attachments); *Esquivel v. State*, 595 S.W.2d 516, 523 (Tex.Cr.App. 1980), *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) (even though appellant's objection did not preserve error and his motion to quash was insufficient we also noted that appellant failed to demonstrate harm resulting from improper jury procedures); *Stephenson v. State*, 494 S.W.2d 900, 905–906 (Tex.Cr.App. 1973) (injury not shown where court refused motion for attachments). Accordingly, precedent has effectively overruled *Fontenot* to the extent that it implies that harm or injury need not be shown for any violation of jury law.

The two non-jury shuffle cases favorably citing the above quoted language from *Fontenot* do not in their holdings rely upon the portion of the quote requiring reversal without a showing of harm. Instead, both cases overruled the appellant's grounds because the appellant did not "promptly and timely" object to the questioned jury selection procedures and demand compliance with applicable laws. *Ferguson v. State*, 639 S.W.2d 307, 309 (Tex.Cr.App.1982); *Dent v. State*, 504 S.W.2d 455, 457 (Tex.Cr.App.1974).

his trial." *Lewis v. State,* 815 S.W.2d 560, 563 (Tex.Cr.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). Accordingly, even if the selection procedures complained of violate the applicable statutes, appellant must show harm in order to warrant reversal. *Id.; Neal v. State,* 689 S.W.2d at 424.

Appellant claims that he was harmed because after exhausting all of his peremptory strikes he was forced to accept an objectionable juror, Joan Smyth. An objectionable juror is " 'one against whom such cause for challenge exists as would likely affect his competency or his impartiality in the trial' … [w]ithout some such showing, it is idle simply to say that a juror is objectionable." *Stephenson,* 494 S.W.2d at 900, 906 (quoting *Hudson v. State,* 28 Tex.App. 323, 13 S.W. 388, 389) (1890). In points of error fourteen, twenty, twenty-one and twenty-two, appellant claimed the trial court erred in denying his challenge for cause against Joan Smyth. We found those claims without merit. Appellant now makes the allegation that because of the imperfections in the jury selection procedures, he was forced to accept Joan Smyth as a juror and therefore was harmed. Appellant does not point to any evidence in support of his allegation that Smyth was objectionable. We hold that even if the jury selection procedures complained of were in violation of the controlling statutes, appellant has failed to demonstrate that he was harmed thereby.

In addition to showing harm, we also note that "[e]ach party may challenge the array *only* on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or an acquittal." Article 35.07 V.A.C.C.P. (emphasis added). In the absence of evidence that the officer acted wilfully, reversal will not be warranted. *Porter v. State* 623 S.W.2d at 376. Appellant's motion to quash alleged that:

The officer summoning the jury has willfully [sic] summoned with a view to securing a conviction in that:

(a) prospective jurors have been improperly excused; and

(b) Dallas County has systematically failed to impose civil sanctions against prospective jurors who ignore their summons, which failure results in jury panels made up of prospective jurors that do not adequately reflect a true cross-section of the community.

We hold that appellant's allegations are insufficient to support a showing that the summoning officer acted wilfully in an attempt to secure appellant's conviction. The fact that prospective jurors were improperly excused does not support a conclusion that the officer acted wilfully in an effort to obtain a conviction. While we do not condone the practice of Dallas County in failing to impose sanctions against prospective jurors who do not respond to their summons, that practice alone does not evidence a *willful* intent to obtain appellant's conviction. Appellant's points of error twenty-six through twenty-nine are overruled.

In points of error thirty through thirty-two appellant complains of improper jury argument at both the guilt/innocence and punishment stages of trial. Proper jury argument must fall within one of the following four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law enforcement. *E.g., Long,* 823 S.W.2d at 267; *Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Cr.App.1990); *Harris,* 784 S.W.2d at 12. Even if an argument is outside of one of these areas, an instruction to disregard the remarks will normally cure the error, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused", in which case, the error is reversible. *Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Cr.App.1990); *see also Kinnamon,* 971 S.W.2d at 89. Generally, in order to preserve jury argument error a contemporaneous objection must be made and an adverse ruling obtained. If the objection is sustained, the defendant must request an instruction to disregard the argument and,

if granted, move for a mistrial. *Harris*, 784 S.W.2d at 12.

We will not separately address the merits of each of the prosecutor's statements complained of by appellant since in four of the ten arguments complained of, defense counsel failed to object at trial. In another of the arguments complained of, although defense counsel's objection at trial was sustained, he did not request an instruction to disregard the remarks. We have reviewed these five arguments in light of the entire record and hold that none are so inherently prejudicial as to deny appellant a fair trial, amounting to fundamental error. Therefore, error, if any, was waived, due to the failure to properly preserve error. We now address the merits of the remaining arguments to which defense counsel properly preserved error.

█ In closing arguments during the guilt/innocence portion of trial, the prosecutor asked the jury to recall testimony that the gunman was "very, very large". Appellant objected to this comment as "outside of the record". The prosecutor also pointed to the pretrial lineups and stated that the

> line-ups pretty much tell it like it is as far as the weights are concerned. The weights of these individuals that are picked out by some of the people in the lineups, 265, 260, 260, 275, 260, 245, 265, and they want you to believe out of all these witnesses who came up there, you know, that somehow the shooter was 180 pounds.

In objecting, defense counsel argued that the prosecutor was implying that the large size of the suspects chosen by the police to appear in the lineup was evidence of the gunman's large size. The State contends that appellant misinterprets the argument and instead suggests that the point being made by the prosecutor was that even some of the witnesses who selected individuals other than appellant from the lineup, selected large individuals.

We hold that the prosecutor's comment that the gunman was "very, very large", was a reasonable deduction from the evidence based upon testimony that the gun-

man weighed over 200 pounds, including some testimony that he was between 250–275 pounds. We also hold that the State's argument regarding participants in the lineup constituted a summation of the evidence presented at trial. Under either the State's or appellant's interpretation, the comment was a reasonable deduction from the evidence and therefore the trial court did not err in allowing it.

In referring to the voluntary statement given to the police by cohort Stallworth shortly after the offense, the prosecutor stated that "Stallworth gave a voluntary statement. And I'll ask you to consider it's a reasonable deduction of what he had to say about this transaction too." Defense counsel's objection to this argument as "inviting the jury to speculate on what Mr. Stallworth said" was sustained and the jury was instructed to disregard the comment. Appellant's motion for a mistrial was denied.

█ Arguments made during the guilt portion of the trial must be based upon facts in evidence. Clearly, it is improper to invite the jury to speculate on the existence of evidence not presented. Here, the prosecutor was inviting the jury to do just that by asking them to speculate on the contents of Stallworth's voluntary statement. However, the prosecutor's remarks were not so prejudicial as to constitute reversible error. Moreover, only offensive or flagrant error calls for reversal when there has been an instruction to disregard. *Jones v. State*, 568 S.W.2d 847 (Tex.Cr.App.1978), *cert. denied*, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978). Here, the prosecutor's comments were not explicitly suggestive of the contents of the statement. Moreover, the existence of a statement had been made known to the jury during the guilt/innocence phase of the trial. We hold that these comments did not amount to the type of flagrant of offensive error that could not be cured by the court's instruction to disregard.

█ Appellant objected to the prosecutor's argument at the punishment stage of the trial that appellant "was so bad [in

school] that he didn't even go to regular classes ... He had to be isolated from the rest of the students so the rest of the school could function" as being outside of the record. Review of the record shows that although Nathaniel Sylvester, appellant's high school teacher and coach, testified that appellant was placed in the "special assignment class" which was "isolated from the other regular students" he did not state that the purpose of that class was "so the rest of the school could function." However, Sylvester did testify that appellant was placed in this special class because he was a "truancy problem". We hold that the State's argument that the special class was removed from the rest of the school in order to prevent disruption was a reasonable deduction from the evidence and was therefore not improper.

■ Referring to an extraneous assault committed by appellant[26], the prosecutor suggested to the jury that the victim "would probably be a dead man today" if a police officer had not come along and interrupted the assault. Appellant objected to this argument as outside of the record. Although such speculation was arguably beyond the scope of proper jury argument, it was not so extreme or manifestly improper as to call for reversal in light of testimony that appellant had a gun the night of the altercation and took several shots at the officer who came upon the scene, and in view of other testimony at the punishment phase evidencing appellant's violent nature. Accordingly, the prosecutor's remarks were harmless. Appellant's points of error thirty, thirty-one and thirty-two are overruled.

In his thirty-third point of error appellant claims the trial court erred in overruling his application to take the deposition of Mark DeCardenas. Appellant claimed the deposition was necessary in order to properly prepare for trial since it was "antici-

pated" that DeCardenas would not talk to appellant's attorneys.

■ Pursuant to Article 39.02 V.A.C.C.P., a defendant may take the deposition of a witness upon a showing of "good reason." *May v. State*, 738 S.W.2d 261, 273 (Tex.Cr.App.1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). The trial court has broad discretion in ruling on an application to take a deposition and will be reversed only when it has abused its discretion. *Id.* We have held that there is not an abuse of discretion for the denial of a motion to take a deposition where the witness testifies at trial and is subject to cross-examination by the defense. See *May*, 738 S.W.2d at 272–73 (even where witnesses gave different version of events at trial than in pretrial statement, there was no abuse of discretion in denial of motion to take deposition); *McKinney v. State*, 491 S.W.2d 404, 406 (Tex.Cr.App.1973).

■ As the State correctly points out in response to this point of error, appellant did not in his motion, nor does he now, allege any facts showing that DeCardenas refused to talk to appellant's attorneys. Appellant merely alleged that such refusal was "anticipated." Appellant makes no allegations that defense counsel even attempted to talk to DeCardenas. Although appellant asserted that without the deposition, his attorneys were unable to adequately prepare for trial, he alleged no facts showing actual harm. DeCardenas testified at trial and was subject to extensive cross examination by defense counsel. We hold that the trial court did not abuse its discretion in denying appellant's motion to take DeCardenas' deposition. Appellant's thirty-third point of error is overruled.

In point of error thirty-four, appellant claims the trial court erred as a matter of

---

**26.** At the punishment phase of the trial, Police Officer Dennis Davis testified that he had accidentally come upon appellant and four or five other men beating up on one man by kicking him in the body and head as he lay on the ground outside of a nightclub. The offenders dispersed. The severity of the victim's injuries was unknown since the victim disappeared from the scene prior to the arrival of the ambulance. Davis further testified that appellant came back to the scene several minutes later, was carrying a gun and took a couple of shots at Davis, but missed. The bullets were retrieved by investigating officers.

law in overruling appellant's motion for a change of venue because the State did not timely file controverting affidavits.[27] The State contends that controverting affidavits *were* timely filed prior to the court's hearing on the motion and that even if the affidavits were not timely filed, appellant waived any error by his participation in a hearing on the merits of the motion. We agree with the State.

■■■■ A defendant's proper motion to change venue entitles him to a change of venue as a matter of law unless the State files controverting affidavits. *Lundstrom v. State*, 742 S.W.2d 279, 281–82 (Tex.Cr. App.1986). The reason for this rule is that "in the absence of controverting evidence, there is no issue of *fact* to be resolved." *Id.* at 282. However, this right is waived by the defendant if he participates in a hearing on the merits of the motion and allows the State to put on evidence in such hearing, consequently rendering the issue one of fact for determination by the trial court. *Id.* (citations omitted).

Appellant's Motion to Change Venue, together with supporting affidavits were filed on May 24, 1988. A pretrial hearing was set for June 8, 1988. Subsequent to the filing of the motion but prior to the hearing, appellant caused to be issued to the major of Dallas and certain other city and police association officials various subpoenas duces tecum and subpoenas to appear to testify on the motion. The State filed motions to quash these subpoenas. At the June 8 hearing, defense counsel claimed that appellant was entitled to a change of venue as a matter of law since the State had not yet filed controverting affidavits. In response, the judge stated that he would only at that time address the motions to quash and that, as a visiting judge, he "had no intention of hearing" the venue motion, since the presiding judge desired to address that motion himself upon his return. The court then allowed the State to file its controverting affidavits before addressing the merits of the mo-

tions to quash. Upon return of the presiding judge, three subsequent hearings were held on the merits of appellant's motion to change venue at which the State called witnesses and put on evidence controverting the motion. Appellant also participated to the full extent in these hearings, calling its own witnesses and conducting cross-examination of the State's witnesses. Appellant did not, until this appeal, re-assert his contention that he was entitled to a change of venue as a matter of law.

■■■ Without reaching the issue of whether the State's affidavits were timely filed, we hold appellant waived his right to a change of venue as a matter of law by participating in hearings on the merits of the motion and allowing the State to put on evidence, without objection, controverting appellant's motion, at which time the issue then became one of fact. *See, e.g., Lundstrom; Stapleton v. State*, 565 S.W.2d 532, 534 (Tex.Cr.App.1978). Point of error thirty-four is overruled.

In points of error thirty-five and thirty-six, appellant claims the trial court erred in overruling appellant's objections to witness Frank Green's in-court identification on the grounds that it was tainted by impermissibly suggestive pretrial lineup procedures.

The trial court held a hearing outside the presence of the jury on the admissibility of Green's pretrial identification. At the hearing it was established that Green was shown a photo lineup on the evening of the offense. Appellant's picture did not appear in this first lineup and Green was unable to select anyone from that lineup as the offender. The next day Green was shown a second photo lineup which included appellant's picture. Green testified that he tentatively identified appellant, but did not make a positive identification because he did not want "to pick the wrong person". Green later viewed a live lineup at which he positively identified appellant. Each of the lineups included five or six individuals.

---

**27.** Although appellant does not allege that the trial court abused its discretion in denying the motion based upon its factual merits, we have reviewed the record and note that the State

offered sufficient evidence rebutting appellant's motion to support the trial court's ruling. *See Cockrum v. State*, 758 S.W.2d 577, 584 (Tex.Cr. App.1988).

Appellant was the only individual who appeared in more than one of the lineups. Appellant argues that since appellant was the only individual who appeared repeatedly in the lineups, his familiarity suggested to Green that he was the suspect.

 Identification testimony that follows impermissibly suggestive pretrial identification procedures is nevertheless admissible if the totality of the circumstances show no substantial likelihood of misidentification. *Harris v. State*, 827 S.W.2d 949, 959 (Tex.Cr.App.1992); *Webb v. State*, 760 S.W.2d 263, 269 (Tex.Cr.App.1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). Where the "totality of the circumstances show no substantial likelihood of misidentification", the testimony is considered "reliable". *Webb*, 760 S.W.2d at 269. The appellant bears the burden of establishing by clear and convincing evidence that the in-court identification is unreliable. *Harris*, 827 S.W.2d at 959.

 Even assuming the pretrial lineup procedures utilized here were impermissibly suggestive, we hold that under the totality of the circumstances, Green's testimony was not shown to be unreliable. Frank Green, the store manager, viewed the offense from a glass window where he was standing behind an elevated booth inside the store. He was approximately 25 feet from the location of the offense. He testified that he had seen McCarthy and DeCardenas arrive and begin to walk toward the store. Green testified that he saw appellant approach McCarthy and DeCardenas and attempt to grab the money bag. Green stated that he viewed appellant for about "two to three minutes" during the commission of the offense.[28] Immediately following the offense, Green described appellant to the police as being approximately five feet ten inches tall and weighing 210 to 220 pounds. Although appellant's actual height is approximately six feet, three inches and his weight approximately 250–260 pounds, Green explained this discrepancy by stating that "[w]hen a man is jumping around with a pistol, you can't measure his weight down to a point." Green testified that if he had not seen any lineups, he would nevertheless have been able to make his in-court identification of appellant and agreed that his in-court identification was based upon his observation of appellant during the offense. In view of Green's close proximity to appellant during the commission of the offense, his opportunity to observe virtually the entire commission of the offense from start to finish, the certainty in which Green identified appellant at trial and his testimony that he would have been able to do so even without having viewed the pretrial lineups, appellant did not satisfy his burden of showing by clear and convincing evidence that Green's testimony was unreliable. Appellant's thirty-sixth point of error is overruled.

In point of error forty, appellant claims the trial court erred in overruling appellant's objection to witness Warren Banda's in-court identification of appellant on the grounds that both the pretrial lineup and the "in-court lineup"[29] were impermissibly suggestive.

During the punishment phase of trial, Banda testified that on January 22, 1988, upon return from a bank where he had withdrawn approximately $30,000 for the purpose of cashing Friday afternoon paychecks at the liquor store where he was employed, he was approached in the store parking lot by a gunman who demanded the sack holding the money. On the day of the robbery Banda described the robber to the police as "a huge man", about 5'10" and 300 pounds. Six weeks after the robbery, Banda viewed a live lineup where he identified appellant as the robber. Appellant claims the pretrial lineup was impermissibly suggestive because although Ban-

---

28. The State, however, concedes it is very unlikely that the commission of the offense took as long as "two or three minutes".

29. During the identification hearing, Banda left the witness stand at the direction of the prosecutor and stood in front of appellant, who also stood at the prosecutor's direction, in order to get a closer look at appellant. Appellant refers to this "one-on-one" viewing as the "in-court lineup".

da had previously described the robber as 5'10" and weighing 300 pounds, all of the individuals in the lineup were at least six feet tall and none weighed as much as 300 pounds.

The mere fact that the lineup participants did not perfectly match the witness' prior physical description of the robber does not render the lineup impermissibly suggestive. *See Williams v. State*, 675 S.W.2d 754, 757 (Tex.Cr.App. 1984); *Smith v. State*, 646 S.W.2d 452, 459 (Tex.Cr.App.1983). The physical characteristics of the lineup participants did not differ unreasonably from Banda's description. Furthermore, it is more important, for purposes of avoiding suggestive procedures, that appellant did not somehow appear conspicuous among the other participants. The participants in the subject lineup were all described as "large black males".[30] According to the testimony at the identification hearing, all of the participants were of the same race identified by the witness as being the race of the robber, all of the participants were wearing white jail clothing and they were all within a few inches of being the same height and within approximately 20–30 pounds of the same weight. There is no evidence that appellant stood out as the likely candidate among the others in the lineup. We hold that trial court did not err in finding that the pretrial lineup procedures were not impermissibly suggestive.

Appellant also claims that the in-court identification should have been suppressed based upon Banda's testimony that he could not have remembered appellant's face from the robbery alone, absent the lineup. Appellant further complains of the "in-court lineup" as suggestive because appellant was in custody and was the only person to choose from.

In the absence of impermissibly suggestive pretrial procedures, in-court identification testimony is always admissible. *Jackson v. State*, 628 S.W.2d 446, 448 (Tex.Cr.App.1982). Having held that the pretrial lineup viewed by Banda was not impermissibly suggestive, Banda's in-court identification is therefore admissible, despite his testimony that he would not have been able to identify appellant from the robbery alone, due to the passage of time between the date of the robbery and the date of Banda's testimony. Appellant's objections to the reliability of the in-court identification go to its weight and not its admissibility.

Appellant's contentions regarding the "in-court lineup" are without merit. Banda did not view a "lineup" in court, but merely stood in front of appellant in order to "get a closer look" in giving his identification testimony. We can conceive of no reason to hold that an in-court identification should be invalidated because the witness wanted to "get a closer look" at the appellant. Point of error forty is overruled.

In his thirty-seventh point of error, appellant claims that the trial court erred in exempting Rhonda Marie McCarthy, widow of the deceased, from "the Rule" following her testimony. Appellant argues that because neither the trial court nor the State offered any justifiable reason for her exemption, the court abused its discretion and committed reversible error. The State contends that under the two-step analysis set forth in *Archer v. State*, 703 S.W.2d 664 (Tex.Cr.App.1986) and *Guerra v. State*, 771 S.W.2d 453, 474–75 (Tex.Cr.App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989), for evaluating whether exemption of a witness from the Rule was

---

**30.** Although a photograph of the lineup was entered into evidence as a Defendant's Exhibit during the identification hearing, it was not brought forward with the record on appeal. We note that none of the exhibits were brought forward with the record on this appeal. Make a written request to the official reporter designating portions of the evidence to be included in the statement of facts and shall file a copy of the request with the clerk of the trial court. TEX. R.APP.P. 53(a). The record here does not contain any such written request, so we cannot determine whether or not copies of exhibits were requested by appellant. We note that the Appendix for Criminal Cases, adopted by this Court as an appendix to the Rules of Appellate Procedure, indicates that where legible, copies of photographs and paper exhibits are ordinarily included in the statement of facts. TEX. RULES APP.P. Appendix for Criminal Cases.

reversible error, the trial court did not abuse its discretion in exempting Rhonda Marie McCarthy from the Rule.

██ At the request of either party, the court shall order witnesses removed from the courtroom so that they cannot hear the testimony of other witnesses. TEX. R.CRIM.EVID. 613. Enforcement of the Rule is within the discretion of the trial court and its actions will only be disturbed upon a showing of abuse of discretion or injury to the defendant. *Beets v. State,* 767 S.W.2d 711, 747 (Tex.Cr.App.1987), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989). In determining whether the trial court abused its discretion in allowing a violation of or exemption from the Rule, the following questions must be considered: (1) Did the witness actually hear the testimony or confer with another witness without court permission, and (2) Did the witness's testimony contradict the testimony of a witness he actually heard from the opposing side or corroborate the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence? *Guerra,* 771 S.W.2d at 475.

██ Rhonda McCarthy was the first person to testify at the guilt/innocence portion of the trial and was not recalled. She was not a witness to the offense. With respect to the first criteria set forth in *Guerra,* since Rhonda McCarthy was the first person to testify, she could not have previously heard the testimony of another witness. Appellant has pointed to no evidence that Rhonda McCarthy conferred with another witness prior to testifying. The second prong presumes the witness in question "actually heard" the testimony of another witness prior to testifying. Since Rhonda McCarthy was the first to testify, her testimony could not have been influenced by other testimony that she "actually heard". We hold the trial court did not abuse its discretion in exempting Rhonda McCarthy from the Rule. Appellant's thirty-seventh point of error is overruled.

██ In points of error thirty-eight and thirty-nine appellant complains of the trial court's overruling appellant's objections to the admission of testimony regarding oral statements made by appellant during his incarceration at the Dallas County Jail. Appellant argues that since the Dallas County Sheriff's Office did not respond to his subpoena requesting copies of documentation of any behavior of appellant that would subject him to disciplinary action, then the testimony of Deputy Robert Holley, based upon Holley's notes of statements made by appellant while in jail, should not have been admitted. The State contends that it previously orally informed defense counsel of the substance of the statements and appellant was therefore not harmed by the inaction of the Sheriff's Office in failing to provide the same information in the form of Holley's notes. Appellant also claims the testimony should have been excluded on the grounds that it was irrelevant and was the product of custodial interrogation.

Prior to the punishment phase of trial, the State filed a document outlining the evidence it intended to offer at punishment. Included on the list of evidence to be offered was "threatening of DCO staff in county jail". The State filed another document a month later which specified that, with respect to evidence regarding "threatening of DCO staff in county jail", the State planned to offer evidence of threats appellant made to Deputy Holley, the substance of which had been read orally to defense counsel the day before the second document was filed. Appellant subsequently issued a subpoena to the Dallas County Sheriff's Office requesting documentation of any behavior of appellant that would have subjected him to disciplinary action. The Sheriff's Office stated that there was nothing in their files responsive to the subpoena. At the punishment phase of trial, Holley testified about threats made to him by appellant. Holley testified that he had made notations of the threats, whereupon Holley's notes were shown to defense counsel. Appellant concedes that the comments previously read orally to defense counsel were the same as those testified to by Holley and evidenced by the notes. Appellant agrees that there was no

"surprise" element in Holley's testimony. The court questioned defense counsel on the issue of whether the substance of the notes differed significantly from the information previously provided by the State:

THE COURT: What manner or means does this document materially alter or change that which the prosecutor told you on November 16, 1988?

[DEFENSE COUNSEL]: In all honesty, Judge, I don't think it alters a thing. * * * We are not surprised by what Deputy Holley has said, has testified to, and I don't mean to imply that. We are not surprised by his testimony. [The Prosecutor] told us fully that's what he would testify to. But the issue is the fact that the defense can issue a subpoena and have it ignored.

Appellant argues the testimony should have been excluded as a way of sanctioning the Sheriff's Office for its failure to provide the notes in response to appellant's subpoena.

We are aware of no criminal case, nor has appellant cited any case, holding that evidence should be excluded as a sanction against a local sheriff's office for its failure to respond to a subpoena which allegedly required production of that evidence, particularly when substantively equivalent evidence was previously provided by the State.[31] Appellant admits the failure of the Sheriff's Office to respond to the subpoena did not render the contents of Holley's testimony a surprise since the State had previously informed appellant of its substance.[32] Since appellant was previously provided substantively equivalent information from another source, appellant was not harmed by the failure of the Sheriff's Office to provide appellant with a copy of the notes.[33]

Appellant also claims Holley's testimony about statements made by appellant should not have been admitted because the statements were the product of custodial interrogation.[34] Appellant also argues the statements were irrelevant to any issue at punishment.

Appellant has pointed to no evidence supporting his contention that appellant's statements were the product of custodial interrogation. Clearly, while incarcerated in the Dallas County Jail, appellant was "in custody". However, we cannot say that appellant's statements arose from any "interrogation", as that term has been interpreted. Interrogation connotes a "calculated" practice on the part of a government official in an attempt to evoke an incriminating response. *McCrory v. State,* 643 S.W.2d 725, 734 (Tex.Cr.App.1983). Further, interrogation is "questioning initiated by law enforcement officers". *Wicker v. State,* 740 S.W.2d 779, 785 (Tex.Cr.

---

**31.** We recognize that if the state wilfully withholds evidence subject to disclosure pursuant to a *discovery order,* that evidence is inadmissible if a timely objection is made by the defendant. *Lindley v. State,* 635 S.W.2d 541, 543 (Tex.Cr.App.1982). However, even there, if the trial court allows the evidence, a showing of harm must be made in order to obtain reversal on appeal. *Hollowell v. State,* 571 S.W.2d 179, 180 (Tex.Cr.App.1978).

**32.** Appellant claims he was harmed by the content of Holley's testimony, alleging the testimony contributed to the jury's affirmative finding on the issue of future dangerousness. However, the issue here was not whether the testimony was inadmissible due to its content, but instead whether it should have been excluded because of the failure of the Sheriff's Office to provide it prior to trial. The question, then, is not whether harm was caused by the contents of the testimony, but whether harm was caused by the fact that the Sheriff's Office did not provide appellant the notes in response to the subpoena.

**33.** We note that a copy of the subpoena was not preserved as part of the record for review and accordingly, we are unable to determine if the subject notes would even have properly fallen within the scope of the subpoena. For purposes of this opinion, we have given appellant the benefit of the doubt and have assumed the subject notes would have fallen within the scope of the subpoena.

**34.** Appellant claims the statements were inadmissible pursuant to Article 38.22 V.A.C.C.P.. Article 38.22 § 3(a) provides that oral statements of an accused "made as a result of custodial interrogation" are inadmissible unless specified requirements set forth in the article are met. Article 38.22 § 5 provides that "[n]othing in this article precludes admission of a statement ... that does not stem from custodial interrogation".

App.1987) (quoting *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988). In the two incidents testified to by Holley, the statements were described as angry outbursts *initiated by appellant* for no apparent reason and were not made in response to any "interrogation" by prison officials. There is no evidence indicating that the attending prison officials staged the incidents in a calculated attempt to elicit incriminating responses from appellant. With respect to the issue of relevance, evidence is admissible at punishment "as to any matter the court deems relevant." Article 37.071, § 2 V.A.C.C.P.. Evidence of bad acts is relevant to the second submitted issue concerning the likelihood of future violent conduct. We hold the trial court did not err in admitting Holley's testimony. Points of error thirty-eight and thirty-nine are overruled.

Appellant's high school coach and teacher, Nathaniel Sylvester, testified at the punishment stage of trial. In points of error forty-one through forty-six appellant complains of certain of the trial court's rulings pertaining to Sylvester's testimony.

In point of error forty-one appellant claims the trial court erred in overruling appellant's objections to Sylvester's testimony that appellant was a "truancy problem" on the grounds that such testimony was irrelevant.

■■■■■■ The trial court has broad discretion in determining admissibility of evidence at the punishment phase of trial. Generally, the jury is entitled to have before it "all possibly relevant information about the individual defender whose fate it must determine." *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976). Evidence concerning a defendant's childhood and background is admissible at punishment as relevant to the second submitted issue. *Brock v. State,* 556 S.W.2d 309, 316 (Tex.Cr.App.1977), *cert. denied,* 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498; *see also Burns v. State,* 761 S.W.2d 353, 358 (Tex.Cr.App.1988). We hold the trial court did not err in allowing Sylvester's testimony that appellant was a

truancy problem in high school, as probative of appellant's propensity to commit future acts of violence. Point of error forty-one is overruled.

In points of error forty-two and forty-three appellant claims the trial court erred in denying his motion for a mistrial after sustaining appellant's objections to the following two questions directed to Sylvester by the prosecutor: (1) "were the other students frightened of [appellant]", and (2) did appellant "get his way with the other students". The State contends the trial court erred in sustaining appellant's objections to the questions, but also maintains that even if the questions were improper, since they were unanswered, any error was removed by the court's instructions to disregard.

We will not address the issue of whether the trial court's initial ruling on the questions was correct since we agree with the State that, in any event, even if the questions were improper, error was corrected by the court's instructions to disregard the questions.

■■■■■■ When a witness does not have the opportunity to respond to an improper question, the court's instruction to disregard will render the error harmless. *Turner v. State,* 719 S.W.2d 190, 194 (Tex.Cr. App.1986). An exception to this rule is when the question alone is "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds." *Brown v. State,* 692 S.W.2d 497, 501 (Tex.Cr.App.1985). We hold the prosecutor's questions concerning appellant's relationship with other students at his high school were not the type of questions intended to inflame the jury. Therefore, since the questions were not answered by the witness, the court's instructions to disregard rendered any error harmless. Appellant's points of error forty-two and forty-three are overruled.

In his forty-fifth point of error appellant claims the trial court erred in overruling appellant's objections "to the testimony of the witness Nathaniel Sylvester about appellant's reputation". Appellant's objection is based upon five contentions, dis-

cussed below. Appellant does not cite a single authority in support of any of his contentions on this point.

■ Appellant first contends that since he did not have certain school records he could not effectively cross-examine Sylvester's reputation testimony. Sylvester testified that he made various disciplinary reports and notations pertaining to appellant during appellant's high school years. However, the records provided by the school in response to the State's subpoena did not include any of Sylvester's reports. Sylvester stated that his testimony was based upon recollection only, not upon any such records, and that he had not reviewed any records prior to testifying. Sylvester did not testify with any specificity about incidents involving appellant that Sylvester would have filed a report on. There is no evidence that Sylvester had any reason to misrepresent the nature of appellant's behavior in school. Appellant has failed to meet his burden in pointing to any harm resulting from the unavailability of the records.

Appellant next complains that Sylvester's testimony about "shoplifting, street fights, kids in the neighborhood" are not the type of matters that should form the basis of reputation testimony and are not relevant or material to the submitted issues.[35] The testimony appellant complains of was elicited by defense counsel out of the presence of the jury in the following exchange:

Q. [Defense Counsel] What have you heard about [appellant] doing in the community that is not law abiding?

A. [Sylvester] Petty things, you know, shoplifting and different things like that.

Q. Shoplifting. Anything else?

A. Umh, no more than street—street fights, or something like that, whatever you want to call them.

■ Appellant's contention that specific instances of conduct is not the type of information that should serve as the basis for Sylvester's reputation testimony is unfounded. It is well-settled that reputation testimony may be based upon specific instances of conduct described to the witness by other persons in the community. *E.g., Stephens v. State*, 522 S.W.2d 924, 927 (Tex.Cr.App.1975); *Crawford v. State*, 480 S.W.2d 724, 726–27 (Tex.Cr.App.1972); *Smith v. State*, 283 S.W.2d 936, 938 (Tex. Cr.App.1955); *see also* TEX.R.CRIM.EVID. 404(c), 405.

■ Appellant's complaint that Sylvester's testimony about "shoplifting, street fights, kids in the neighborhood" was irrelevant and immaterial to the submitted issues is misplaced since that testimony was elicited outside the presence of the jury. Therefore, its relevance to the special issues is of no moment since the jury was not privy to that testimony and accordingly could not have considered it in its deliberations on the submitted issues.

■ Appellant's third contention that general reputation testimony is irrelevant to any issue at the punishment stage for a capital offense is also without merit. Reputation testimony is clearly admissible at the punishment phase of trial for a capital offense as bearing upon the propensity of the defendant to commit future acts of violence. *E.g., Anderson v. State*, 717 S.W.2d 622, 633 (Tex.Cr.App.1986).

■ In his fourth argument in support of this forty-fifth point of error, appellant claims that because Sylvester's testimony pertained to activities and behavior of appellant as a juvenile it was harmful and should not have been admitted. We disagree. Merely because some of the incidents upon which Sylvester's reputation testimony was based occurred when appellant was a juvenile does not render his testimony inadmissible. We have previous-

---

**35.** Appellant's contention is not altogether clear. At trial, and repeated verbatim in his brief, appellant's complaint in this regard follows:

In addition, we object to [Sylvester's reputation testimony] because of all these incidences [sic] that this witness has been discussing before the Jury, shoplifting, street fights, kids in the neighborhood do not go to any fact issue in this case and, therefore, his reputation is—the underlying reasons for his opinion as to this defendant's reputation are irrelevant and immaterial to this proceeding.

ly stated that "the fact that [appellant] was a juvenile when his reputation became known to the witness won't affect the admissibility of that testimony." *Anderson v. State*, 717 S.W.2d at 633.

Finally, we reject appellant's contention that since Sylvester testified to facts within his personal knowledge, he was not qualified as a reputation witness. Although personal knowledge of specific acts alone as the basis for reputation testimony is contrary to the rationale for admitting reputation testimony, *Nethery*, 692 S.W.2d at 707, a reputation witness is not disqualified simply because his testimony is based upon both personal experience and community reputation. *Lewis v. State*, 503 S.W.2d 806, 808 (Tex.Cr.App.1974). Sylvester stated that his testimony about appellant's reputation was based in part on his personal experiences with appellant and in part on what he had heard about appellant from students and other people in the community. Since Sylvester's testimony was based in part upon what he had heard from conversations with members of the community, he is qualified as a reputation witness. Having found no merit in any of appellant's contentions in support of point of error forty-five, it is overruled.

In points of error forty-four and forty-six, appellant claims the trial court erred in failing to strike Sylvester's testimony due to the failure of the school to produce certain subpoenaed records. Appellant argues that without the records defense counsel was unable to effectively cross-examine Sylvester and that the trial court erred in finding that the failure to produce such documents was harmless error.

The State obtained certain school records pursuant to a subpoena duces tecum served on the principal of appellant's high school seeking production of "school records for" appellant. All of the documents produced by the school were provided to appellant. Although Sylvester testified that he wrote various reports concerning appellant's conduct in school, none of those were among the documents produced. In explaining the missing reports, Sylvester testified that most of the reports retained in student files

are prepared by counselors and assistant principals in the event disciplinary actions are taken and that entries made by teachers are generally not retained. Sylvester further testified that he believed student files to be periodically purged. The trial court held that it could not compel the production of "something that is not in existence', finding that any error due to the unavailability of the records was harmless beyond a reasonable doubt.

The State appropriately points to cases which hold that where the existence of a document is unknown, the court cannot compel production thereof. *Solomon v. State*, 467 S.W.2d 422, 424 (Tex.Cr. App.1971); *Smith v. State*, 464 S.W.2d 855, 858 (Tex.Cr.App.1971). There is no evidence that the school records sought were in existence but for some reason were not produced. Appellant has cited no authority, nor are we aware of any, supporting his contention that since the documents were not available for cross-examination, the witness' testimony should be struck. Appellant has made no allegations that Sylvester's testimony is somehow unreliable or that appellant has reason to believe that Sylvester's testimony would be inconsistent with the content of the missing documents. Appellant has not demonstrated what he hoped to prove by cross-examining Sylvester pursuant to the reports. We hold the trial court did not err in refusing to strike Sylvester's testimony due to the failure of the school to produce documents that may not even be in existence. In the absence of error, a harm analysis is not necessary. Points of error forty-four and forty-six are overruled.

In points of error forty-seven through fifty, appellant claims the trial court erred in admitting into evidence latent and rolled fingerprints identified as appellant's. During the guilt/innocence phase of trial, the State introduced latent fingerprints, identified as appellant's, that were lifted from the passenger door of the blue Plymouth rental car, believed to have been used in the offense. The State also introduced, for comparison purposes, three rolled fingerprints of appellant's taken by the State's

witness. Appellant argues that because there was no evidence linking the blue Plymouth to the subject offense, the prints were irrelevant and were so prejudicial as to outweigh any probative value. The State points out that the blue Plymouth had been observed near Brancatos Grocery several times on the day of the offense. The State also argues that any question about whether the car was linked to the offense should go to the weight and not the admissibility of the evidence.

 Evidence is relevant if it has any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. The fact that appellant's fingerprints were found on a blue Plymouth, a car that matched the description of one that was observed several times near the grocery on the day of the offense, is relevant to and tends to make more probable the State's theory that the Plymouth was used for the offenders' get-away. In addition, at the time the evidence was admitted, Harvey had not yet testified. Harvey later testified that he, appellant and Stallworth rented the blue Plymouth the morning of the robbery and parked it several blocks from the grocery just prior to the robbery. Therefore, even if, as appellant claims, there were not sufficient links between the car and the subject offense at the time the evidence was offered, any error in admitting the evidence was harmless in view of Harvey's subsequent testimony linking the car to the offense. Points of error forty-seven through fifty are overruled.

In points of error fifty-two through fifty-four, appellant claims the trial court erred in refusing to include in its charge to the jury in the punishment portion of the trial appellant's requested definition of the term "deliberately" and an instruction that the word "deliberately" has a different and distinct meaning from the word "intentionally".

■ Appellant's contention is without merit. As the State correctly points out, we have repeatedly held that the trial court

need not define the term "deliberately" in its charge to the jury. *Harris*, 827 S.W.2d at 962; *Lewis v. State*, 815 S.W.2d 560, 563 (Tex.Cr.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992); *Caldwell v. State*, 818 S.W.2d 790, 798 (Tex.Cr.App.1991) (opinion on rehearing), *cert. denied*, —— U.S. ——, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). Appellant's final points of error, fifty-two, fifty-three and fifty-four, are overruled.

The judgment of the trial court is affirmed.

BAIRD, J. not participating.