In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-274 CR


____________________



HERMAN REESE, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 92562






 MEMORANDUM OPINION 


 A jury convicted appellant Herman Reese, Jr. (1) of possession of a controlled substance,
namely cocaine, and assessed punishment at six years of confinement and a $1,000.00 fine. 
See Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003). In this appeal, Reese
challenges the legal and factual sufficiency of the evidence supporting his conviction. We
affirm.

Factual Background


 Detective Danny Buckholtz, a narcotics investigator assigned to the Jefferson County
Narcotics Task Force, testified that on February 20, 2004, he received a tip from a
confidential informant. The informant's tip led Detective Buckholtz to the Shell station at
the corner of Martin Luther King and Cardinal Drive in Beaumont. As a result of the
informant's tip, Detective Buckholtz expected a specific individual and a vehicle of a
particular make and model to arrive at the Shell station. The tip indicated that a black male,
whose street name was "Black," would be at the Shell station and would transport the
narcotics to the confidential informant. Detective Buckholtz expected the transaction to take
place beside the pay phones. 

 At approximately 8:15 p.m., Detective Buckholtz and other officers set up
surveillance in the parking lot of the Shell station. Approximately fifteen minutes later, a
vehicle matching the description provided by the informant pulled into the parking lot. 
Detective Buckholtz saw two black males in the vehicle, and the driver began walking
toward the pay phones. At trial, Detective Buckholtz identified Reese as the driver. The
passenger stayed near the vehicle. 

 Detective Buckholtz testified he approached Reese, told him the information he had
obtained from the informant, and asked Reese whether he had any dope. Reese told
Detective Buckholtz he had some dope, and he gave Detective Buckholtz permission to
remove the drugs from his right front pocket. Detective Buckholtz testified that Reese did
not say whether he had crack or marijuana. Detective Buckholtz then removed a brown
paper bag that contained a second clear plastic bag. According to Detective Buckholtz, the
clear plastic bag contained an off-white rock that he believed to be crack cocaine. Detective
Buckholtz denied recovering any other substances from Reese. 

 Detective Buckholtz's probable cause affidavit alleged Reese possessed a controlled
substance, namely cocaine. Detective Buckholtz admitted that the book-in card at the jail
stated Reese was charged with possession of marijuana, but he stated, "[t]hey entered it in
the computer incorrectly." Detective Buckholtz testified, "[m]y responsibility is to charge
him correctly. . . . [M]y Probable Cause Affidavit is what the jail is suppose[d] to look at. 
And apparently there was a typo involved in this particular case where they . . . entered
possession of marijuana, it should have been possession of controlled substance. The jailer
or the jail made a mistake." Detective Buckholtz testified Reese was to be charged only with
possession of a controlled substance, not possession of marijuana. Detective Buckholtz
testified that if he had found any other substances on Reese, his report would so reflect. 

 Detective Buckholtz identified the subject as Reese, and he field tested the contents
of the plastic bag. Detective Buckholtz then sealed the recovered substance in an evidence
bag, initialed it, dated it, and wrote the case number on the front. Detective Buckholtz
identified State's Exhibit 1 as the substance he recovered from Reese, and he testified that
the original evidence tape was still intact. Detective Buckholtz transported the substance and
a lab form to the crime lab on February 23, 2004. According to Detective Buckholtz, holding
items for several days before transporting them to the crime lab was not unusual. Before
Detective Buckholtz transported the substance to the crime lab, he recorded its approximate
weight, which included the substance and its packaging. Detective Buckholtz testified that
when crime lab personnel weigh the substance, they remove its packaging, so the initial
weight almost always differs from the weight reported by the crime lab. Detective Buckholtz
testified that the weight of a substance sometimes changes as it loses moisture, and some
weight is also lost in the testing process.

 Emily Esquivel, a forensic analyst with the Jefferson County Crime Lab, testified she
analyzed the evidence in Reese's case. According to Esquivel, her former co-worker Melissa
Taylor was the first analyst to test the evidence. Esquivel testified that she has access to the
laboratory's records regarding submission of the evidence and the initial testing performed
by the prior analyst. According to Esquivel, substances are weighed both before and after
testing so the laboratory can ascertain how much is consumed during testing. Esquivel stated
that cocaine frequently loses weight due to loss of moisture while in storage. 

 Esquivel testified that the records in this case reflect that Detective Buckholtz was
both the seizing Detective and the transporting Detective, and he submitted the evidence to
the laboratory on February 23, 2004. Esquivel testified the laboratory has about a five-month
backlog. According to Esquivel, Taylor first reported her results on July 28, 2004. Esquivel
opined that nothing in the laboratory's records indicated a break in the chain of custody when
Taylor removed the items for analysis, and Detective Buckholtz's original seal was still
intact. 

 According to Esquivel, she removed the evidence from the vault on May 20, 2005,
after being informed that the she needed to reanalyze the substance for trial. Esquivel
reported an initial weight of 4.51 grams, while Taylor had reported a weight of 5.22 after
analysis. Esquivel's testing identified the substance as cocaine. Esquivel testified cocaine
is a controlled substance in Penalty Group 1 of the Texas Controlled Substances Act. 
According to Esquivel, there is no indication that Officer Buckholtz submitted anything other
than cocaine for analysis in this case. 

 Deputy Joey Hill of the Jefferson County Sheriff's Department testified he is assigned
to book-in at the jail. Deputy Hill testified he was asked to review the book-in records of
February 20, 2004, regarding Reese. According to Deputy Hill, the probable cause affidavit
filed by the arresting officer is part of the book-in records maintained at the jail. After
reviewing both the paper records and the computer records, Deputy Hill determined that a
mistake was made in the data entry operation on the computerized record. Deputy Hill based
this conclusion upon the original probable cause affidavit, which stated Reese should be
charged with possession of a controlled substance. Deputy Hill testified that when the charge
was entered into the computer, the officer who entered the data listed the charge as
"possession of marijuana." Deputy Hill testified that based upon his review of the records,
he believes the jail made an error in listing the charge as "possession of marijuana." 
According to Deputy Hill, the trial court also erroneously arraigned Reese for possession of
marijuana. Deputy Hill testified that when the mistake was discovered, someone scratched
out "marijuana" and wrote "controlled substance" on Reese's bond. Deputy Hill testified
that nothing in the paper book-in records indicates Reese was arrested for possession of
marijuana. 

 Reese testified that on February 20, 2004, he brought his friend "Black" to a Shell
station to pick up his check. According to Reese, as he walked to the store to get change, two
officers approached him, and Detective Buckholtz asked him whether he had anything illegal
in his possession. Reese testified that he replied, "Yes, sir, I have some weed in my front
pocket." Reese consented to a search of his pocket. Reese testified that Detective Buckholtz
"grabbed me and put me on the car, . . . and, then, the other officer started searching me in
my pocket. And, then, that's when the officer come out with a bag of marijuana out of my
front pocket." According to Reese, the other officer retrieved the drugs from his pocket
while Buckholtz held him down. Reese testified that Officer Buckholtz "then immediately
went to go search the vehicle." Reese testified that the marijuana was in a clear plastic bag. 
He denied having a brown paper bag. Reese also denied having crack cocaine in his pocket. 
Reese testified that his brother gave him the marijuana, but he did not call his brother to
testify because "I don't want them jumping on my brother and let him lose his job and get
in trouble behind my mistake." 

 Reese testified that after the other officer retrieved the drugs from his pocket, the same
officer (whose name Reese could not recall) read him his rights and booked him in the jail. 
According to Reese, when the transporting officer booked him in the jail, he said, "We have
him on possession of marijuana." Reese testified that the trial court arraigned him for
possession of marijuana the next morning, and he pled guilty. Reese testified that Officer
Buckholtz 

 obviously made a mistake. I mean, he was looking for someone else and he
approached me and . . . I wasn't the guy. I just had marijuana on me. He said
he was looking for controlled substance. But, . . . I didn't have no controlled
substance. I haven't even seen no brown bag. I didn't even have a brown bag. 
I had a clear plastic bag. 


When asked whether he wanted the jury to believe that Detective Buckholtz and Deputy Hill
were lying to cover their mistake, Reese responded, "Correct." Reese admitted he was
previously convicted of forgery and served five years in prison after his probation was
revoked. 

Reese's Issue


 Reese's sole issue challenges the legal and factual sufficiency of the evidence
supporting his conviction. In reviewing issues of legal sufficiency, an appellate court views
the evidence in the light most favorable to the verdict to determine whether a rational fact
finder could have found each element of the offense beyond a reasonable doubt. Swearingen
v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). It is within the sole province of the jury
to reconcile conflicts, contradictions, and inconsistencies in the evidence. Cain v. State, 958
S.W.2d 404, 408-09 (Tex. Crim. App. 1997); Cooks v. State, 844 S.W.2d 697, 708 (Tex.
Crim. App. 1992). The trier of fact may choose to believe or disbelieve any portion of a
witness's testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

 In reviewing factual sufficiency, we consider all of the evidence in a neutral light and
determine whether the jury was rationally justified in finding guilt beyond a reasonable
doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The evidence may
be factually insufficient in two ways: 

 First, when considered by itself, evidence supporting the verdict may be too
weak to support the finding of guilt beyond a reasonable doubt. Second, there
may be both evidence supporting the verdict and evidence contrary to the
verdict. Weighing all the evidence under this balancing scale, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard
could not have been met, so the guilty verdict should not stand. This standard
acknowledges that evidence of guilt can "preponderate" in favor of conviction
but still be insufficient to prove the elements of the crime beyond a reasonable
doubt. Stated another way, evidence supporting guilt can "outweigh" the
contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. 


Id. at 484-85. An appellate court "must give due deference to the fact finder's determinations
concerning the weight and credibility of the evidence. . . ." Swearingen, 101 S.W.3d at 97.

 Detective Buckholtz testified that he recovered cocaine from Reese's pocket after
receiving a tip from a confidential informant. Detective Buckholtz testified that his probable
cause affidavit stated Reese should be charged with possession of a controlled substance. 
Detective Buckholtz opined that the jail personnel made a mistake when entering data in the
computer, so Reese was erroneously charged with possession of marijuana. Deputy Hill also
testified that the jail made a mistake in entering the date into the computer. Emily Esquivel
testified that she tested the substance recovered from Reese and determined it to be cocaine. 
Reese testified that he had marijuana, not cocaine, in his possession, and he denied having
a brown paper bag. Reese also testified that another officer, not Detective Buckholtz,
recovered the drugs from his pocket. According to Reese, the officer who transported him
to the jail stated Reese should be charged for possession of marijuana. Deputy Hill and
Reese both testified that the trial court arraigned Reese for possession of marijuana. 

 Viewing the record in the light most favorable to the verdict, a rational jury could
have found Reese guilty of possession of a controlled substance beyond a reasonable doubt.
The evidence is legally sufficient to support the verdict. Furthermore, considering all of the
evidence in a neutral light, the jury was rationally justified in finding Reese guilty of
possession of a controlled substance beyond a reasonable doubt. The evidence supporting
the verdict is not too weak, nor is the contrary evidence, including the direct testimony of
Reese, so strong that the burden of proof could not be met. The evidence is factually
sufficient to support the verdict. We overrule Reese's issue and affirm the trial court's
judgment.

 AFFIRMED.

 
 HOLLIS HORTON

 Justice

 


Submitted on May 18, 2006

Opinion Delivered May 31, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ. 

1. Portions of the record refer to Reese as "Herman Reese" rather than "Herman Reese,
Jr.," and Reese sometimes signs his name as "Herman Reese."