**Affirmed and Opinion Filed June 28, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00001-CR**

**JUSTIN DOUGLAS HEATON, Appellant**
**v.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F11-00397-H**

## OPINION

Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice FitzGerald

A jury convicted appellant of manslaughter and found that he used or exhibited a deadly weapon — a motor vehicle. Appellant pleaded true to an enhancement paragraph, and the jury assessed punishment at thirty years' imprisonment. On appeal, appellant complains about statements made during opening statement and closing argument and asserts his trial counsel's performance was constitutionally deficient. Concluding appellant's arguments are without merit, we reform the judgment to correct the offense for which appellant was convicted, and as reformed, affirm the trial court's judgment.

## BACKGROUND

On October 3, 2010, Dr. Gary Purdue was on his way to work in the Intensive Care Unit of Parkland Hospital in Dallas. Dr. Purdue was riding his motorcycle, travelling on Webb Chapel Road, when he was involved in an accident caused by a 1989 Jeep Comanche truck. Dr. Purdue's

body was propelled over a fence, and his injuries were so severe that he died on impact. A Volkswagen Jetta, driven by Maria Zavala was also involved in the accident.

Dallas Police Officer Patrick Bernal conducted the initial accident investigation and discussed his investigation and findings at trial. According to the officer, the driver of the Jeep Comanche, later identified as appellant, had already been taken to Parkland Hospital when he arrived at the scene. The officer recalled that the inside of the Jeep had a strong odor of alcohol, and when he saw appellant at Parkland, he could "definitely smell alcohol" emanating from Appellant's body.

Officer Bernal located Dr. Purdue near a fence. Although Dr. Purdue was wearing a jacket with protective padding and a helmet, his broken bones had deformed his body. Officer Bernal's conclusion was that Appellant ran a stop sign. The autopsy of Dr. Purdue's body was performed by Dr. Jeffrey Barnard, who concluded that Dr. Purdue died as a result of multiple blunt-force injuries following the accident.

Dr. Eastman, a "friend, mentor and then subsequent partner" of Dr. Purdue was called in to ICU on the morning of the fatal collision. Dr. Eastman testified that appellant "still smelled of alcohol on his breath," had bloodshot eyes, and his blood test revealed that he had a 0.221 blood alcohol level. Dr. Eastman explained that when someone has this blood alcohol concentration it evidences consumption of a significant quantity of alcohol. Appellant's medical records show that EMS had also noted that appellant had a heavy alcohol odor.

A trauma nurse from Parkland drew appellant's blood, and testified about the procedure she followed before and after the blood draw. The nurse believed appellant was intoxicated and remembered that he smelled like alcohol. A medical toxicologist tested appellant's blood on the day of the accident and discovered that the alcohol concentration in appellant's blood was 0.22.

A forensic toxicologist, Aria McCall, received delivery of another sample of appellant's blood from the Dallas Police Department on October 4. McCall tested the sample and found that the alcohol concentration in Appellant's blood was of 0.17 grams of ethanol per 100 millimeters of blood. McCall explained that the alcohol concentration in Appellant's blood was double the legal limit, and there was no doubt in her mind that it is unsafe to operate a motor vehicle with blood alcohol concentration at that level.

Accident reconstructionist Timothy Lovett testified about his investigation of the accident. Lovett concluded that appellant was the sole cause of the collision between the Jeep and the motorcycle. Lovett also concluded that appellant was intoxicated at the time of the collision, was traveling 35 miles per hour at the time of impact with Dr. Purdue's motorcycle, failed to keep a proper look-out, disregarded the stop sign at Altman and Webb Chapel, and failed to yield the right of way to Dr. Purdue's path. According to Lovett, Dr. Purdue was traveling at 38 miles per hour on Webb Chapel Road and had no time to react to avoid the collision.

Scott Skarzenski testified as a witness for the defense. Skarzenski stated that appellant and two other friends went to a night club the night before the fatal accident and although appellant consumed vodka sodas, he had his last drink at 1:30 a.m. when he ate a pizza. The group subsequently went to Denny's and then everyone spent the night at Skarzenski's house. Early the next morning, Skarzenski was awakened by his dogs and saw appellant get in his truck and drive away. Skarzenski testified that appellant did not look intoxicated.

Appellant also testified and admitted drinking about six vodka sodas over the space of three hours on the night prior to the accident. Appellant said that after spending the night at Skarzenski's house, he woke up and got in his truck. According to appellant, he was not intoxicated. Appellant further stated that he was familiar with Skarzenski's neighborhood and

knew that there was a stop sign nearby, and he did not intentionally run the stop sign. Instead, appellant said that on the day before the accident, he had been working on the brakes of his Jeep with his father. Appellant reported that a side wheel cylinder was leaking on the brake drum of his truck and that this problem could be a contributing factor to brake failure. Appellant said that he did not remember the accident at all and stated, "I have no idea what happened." On cross-examination, Appellant said that he was aware that two different blood test results showed that his blood had twice the legal limit of alcohol.

Appellant's father corroborated appellant's testimony. Specifically, his father testified that the two had worked on the brakes of the Jeep that day. During the time the two worked on the vehicle, appellant did not consume any alcoholic beverages.

At the conclusion of the trial, the jury found appellant guilty of manslaughter. Appellant pled true to an enhancement paragraph, and the jury assessed punishment at thirty years' imprisonment. This appeal followed.

## ANALYSIS

### Opening Statement and Closing Argument

In his first and third issues, appellant complains about statements made during opening statement and closing argument. The State responds that these arguments have not been preserved for our review. We agree with the State.

During the State's opening statement, the State said:

> Ladies and gentlemen of the jury, this case is about two very different men. The evidence will show you — you're going to hear evidence about who Dr. Gary Purdue was. You'll hear from his son Kyle. He will tell you that he was a loving father and an esteemed doctor at Parkland Hospital.

Counsel for the defense did not object to this statement. During closing argument, the State argued:

–4–

This was a crime. It was a crime that victimized a great man, Dr. Gary Purdue. It's a crime that victimized his family and friends who have been here, steadfast throughout his trial. It's a crime that has victimized his students and patients over the years.

Although defense counsel objected that this was improper argument, she failed to secure a ruling on the objection. Instead, the trial court remarked, "Please contain your remarks to the record."

It is well-established that to preserve error in jury argument, a defendant must contemporaneously object to the statement and obtain an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992). An appellant forfeits any claim that a prosecutor's comments strayed outside the confines of permissible argument if he failed to make a contemporaneous trial objection. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)); *see also* TEX. R. APP. P. 33.1.

Although appellant acknowledges that an objection is required to preserve error, he insists that the trial court should have *sua sponte* advised the jury that the State had strayed from the permissible boundaries of opening statement. But appellant provides no authority for the proposition he advances, and we are not persuaded by his summary argument. Because appellant did not object to the prosecutor's comments during opening statement or obtain a ruling on the objection made during closing argument, these alleged errors have not been preserved for our review. Appellant's first and third issues are overruled.

### Ineffective Assistance

In his second and fourth issues, appellant asserts his trial counsel was ineffective because she failed to object to the prosecutor's statements during opening statement and did not obtain a ruling on the objection made during closing argument. The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal

prosecutions. *See* U.S. CONST. amend. VI. To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*. at 814; *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). We presume that a counsel's conduct falls within the wide range of reasonable professional assistance. *Andrews*, 159 S.W.3d at 101.

The court of criminal appeals recently stated that "[i]n making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). The court further observed that demonstrating ineffective assistance of counsel on direct appeal is "a difficult hurdle to overcome." *Id.* The court instructed, "[T]he record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* Thus, we may not speculate to find trial counsel ineffective. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Direct appeal is usually an inadequate vehicle for raising an ineffective assistance claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93. Counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* at 593. "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 391–92 (Tex. Crim. App. 2005)).

Although appellant filed a motion for new trial, the motion does not assert that appellant's counsel was ineffective. Consequently, trial counsel was never afforded an opportunity to explain her trial strategy and the record is silent as to the reasons for the decisions trial counsel made. *Goodspeed,* 187 S.W. 3d at 392. The underdeveloped record does not affirmatively demonstrate ineffectiveness of counsel, and we cannot conclude that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Menefield*, 363 S.W.3d at 593. Accordingly, we conclude that appellant has not satisfied the first prong of *Strickland*. Appellant's second and fourth issues are resolved against him.

### *Modification of the Judgment*

The State points out that the written judgment misstates the offense for which appellant was convicted, and correctly observes that this court has the authority to reform an incorrect judgment. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). The record reflects that appellant was indicted for manslaughter. The jury was charged on manslaughter and criminally negligent homicide and found appellant guilty of manslaughter.

The judgment, however, states the appellant was convicted of "Intoxication Manslaughter." Therefore, we reform the judgment to reflect that appellant was convicted of manslaughter. As reformed, the judgment of the trial court is affirmed.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120001F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUSTIN DOUGLAS HEATON, Appellant

No. 05-12-00001-CR         V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F11-00397-H.
Opinion delivered by Justice FitzGerald.
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, we reform the trial court's judgment to reflect that appellant was convicted of manslaughter. As reformed, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 28, 2013

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE